## Atlantic States Coal Corporation v. Letcher County et al.

(Decided Dec. 16, 1932.)

P. T. WHEELER and LEWIS E. HARVIE for appellant.

ASTOR HOGG, BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

This is an appeal from a judgment of the Letcher circuit court fixing the value of appellant's property as of July 1, of the years 1929 and 1930, for taxation purposes.

Appellant owns 196 acres in fee and the coal mining rights in 4,880 acres owned by the Kentucky River Coal Corporation and improvements on the leased land including 172 miner's houses and mining

machinery and equipment. The appellant listed its property for taxation as of July 1, 1929, at $24,493. The tax commissioner fixed the total value of the property at $153,335, and the board of supervisors of Letcher county fixed its value at $129,045. An appeal was prosecuted to the quarterly court from the assessment made by the board of supervisors and the appeal was dismissed. An appeal was then prosecuted to the Letcher circuit court.

The appellant listed its property as of July 1, 1930, at $15,000. The different items were listed by it as follows: 196 acres of surface, $2,500; permanent improvements, $6,500; 4,880 acres of lease, $00.00; mine equipment, $6,000; total, $15,000. The county tax commissioner fixed the total value of the property at $134,565 and this valuation was approved by the board of supervisors. The various items were assessed as follows: 196 acres of surface, $2,500; permanent improvements, $54,315; 4,880 acres of lease, $24,400; mine equipment, $53,350; total, $134,565.

The Atlantic States Coal Corporation prosecuted an appeal from this assessment to the Letcher quarterly court and thence to the Letcher circuit court, where the two cases were consolidated. Upon a trial in that court a judgment was rendered fixing the total assessment for each year at $42,380, the value of the various items being fixed as follows: 196 acres of surface, $2,500; permanent improvements, $25,000; 4,880 acres of lease, $4,880; mine equipment, $10,000; total, $42,380.

It is insisted on this appeal that the valuation fixed by the circuit court is not authorized by the evidence and should not exceed $15,000 for either year. Mr. G. T. Howard, an engineer for the Kentucky River Coal Corporation, was introduced as a witness by appellant. He testified that he was acquainted with the properties of appellant and inspected them regularly during 1929 and 1930 in the performance of his duties as an employee of the Kentucky River Coal Corporation which had leased the property to appellant. His testimony in substance was as follows: On the leased property are two operations known as Elsie No. 2 and Elsie No. 4. On July 1, 1929, there were 610 acres of recoverable coal, and on July 1, 1930, there were 590 acres of recoverable coal. There were 30 miner's houses at Elsie No. 4 and 142 houses at Elsie No. 2, all

of which were in a dilapidated condition on July 1, 1929, and July 1, 1930. The mines were not being operated, and most of the houses had been abandoned, and the few that were occupied were not producing any income. The fair cash value of these houses estimated at the price they would bring at a fair voluntary sale was not to exceed $40 each. The equipment, tipples, and machinery were in bad repair and their fair cash value as a whole on the dates in question was not to exceed $6,000. The lease was valueless, since it was burdened with a minimum royalty requirement which was prohibitive. This minimum royalty was $30,000 per annum. Two other witnesses, who were acquainted with appellant's properties, described their condition, and their testimony as to the value of the property was substantially the same as that of Howard.

The property in question was sold in May, 1929, at a receiver's sale and was purchased by the Kentucky River Coal Corporation for $25,000, and it sold the same property to appellant on August 1, 1929, for $25,000; but the appellant was to pay the purchase price as coal was mined at so much per ton. Appellant later went into the hands of a receiver, and the property was sold in September, 1930, at a public sale for $15,000.

The only witnesses introduced by the appellee were Mr. Astor Hogg, the county attorney, and Mr. J. H. Cornett, who was a member of the board of supervisors of Letcher county appointed to equalize property as of July 1, 1930. Mr. Hogg testified that the miner's houses were worth $300 each, but he admitted that they probably would have sold for a much less sum during the years 1929 and 1930. He stated that they had a potential value and under normal conditions in the coal mining industry they would be worth $300 each. He based his estimate of value, not on the price the property would have brought at a fair voluntary sale on the respective assessing dates, but on the price it would bring under normal economic conditions. He knew nothing concerning the character, amount, or condition of the machinery and equipment owned by appellant. Mr. Cornett testified that he was not acquainted with appellant's property and could not say what it would bring at a fair voluntary sale. In fixing the value of property for taxing purposes, the criterion is, not what it may be worth at some future

date nor what it may have been worth in the past, but what was its fair cash value on the date as of which it is assessed.

The standard for fixing the value of property for purposes of taxation is clearly defined in the various sections of the Constitution and statutes relating to the assessment of property. Section 172 of the Constitution provides that all property not exempted from taxation by that instrument shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale. Section 4047 of the Kentucky Statutes provides that the assessor shall administer to every person listing property for taxation an oath which, among other things, requires him to value his property at its fair cash value, estimated at the price it would bring at a fair voluntary sale. Section 4117, Kentucky Statutes, prescribes the oath the supervisors shall take before entering upon the discharge of their duties. The oath reads:

"You swear that you will, to the best of your ability, discharge the duties required of you as supervisor of tax, and that in each instance where the property has not been assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale, you will increase or decrease the value and fix the value at what you believe the property would bring at a fair voluntary sale."

Section 4120, Kentucky Statutes, provides that the board of supervisors shall not reduce or raise any assessment unless the evidence be clear and unmistakable that the valuation is not a fair cash value. Section 4053 prescribes the same standard to be followed by the assessor in fixing the value upon all property listed with him for taxation.

In Board of Supervisors v. Superior Oil Corporation, 210 Ky. 539, 276 S. W. 527, the circuit court fixed the valuation of certain oil and gas leases at a percentage of gross production during the taxing period. In reversing the judgment this court said:

"Oil and gas leases and the rights conferred thereby are 'property' within the meaning of section 172 of our Constitution, and are subject to taxation at their fair cash value, estimated at the price they would bring at a fair voluntary sale. Const. sec. 172; section 4020, Kentucky Statutes 1922; Wolfe County v. Beckett, 127 Ky. 252, 105

S. W. 447, 32 Ky. Law Rep. 167, 17 L. R. A. (N. S.) 688; Mt. Sterling Oil & Gas Co. v. Ratliff, 127 Ky. 1, 104 S. W. 993, 31 Ky. Law Rep. 1229; Raydure v. Board of Supervisors, 183 Ky. 84, 209 S. W. 19; Associated Producers' Co. v. Board of Supervisors, 202 Ky. 538, 260 S. W. 335. Property is taxable if it has a cash value. It has value, if at a fair, voluntary sale it would bring anything. The amount it would bring at a fair, voluntary sale is the amount our Constitution and Statutes provide, and the opinions of this court hold, at which property shall be listed for purposes of taxation. The quotation above from the judgment of the trial court herein discloses beyond question that a new and an altogether unauthorized method was devised by the trial court to arrive at the valuation that should be placed upon appellee's property for purposes of taxation.''

In cases of this character great weight will be given to the finding of the circuit court, but in the instant case there was no competent evidence tending to show that the fair cash value of appellant's property exceeded $25,000 either on July 1, 1929, or July 1, 1930.

In its appeal to the circuit court from the 1929 assessment, appellant asked that the valuation of its property be fixed at $25,000. It conceded that its property had a fair cash value on that date of $25,000 and this opinion evidently was based upon the fact that it had sold immediately before and immediately after the assessing date for that sum. While it contends that the valuation as of July 1, 1930, should be fixed at $15,000, its own witnesses admit that the property was of the same value on the two dates. We conclude that the valuation should be fixed at $25,000 for each year.

The judgment is reversed, with directions to enter a judgment in accordance herewith.