## John P. Gorman Coal Co.'s Receiver v. Perry County et al.

(Decided Feb. 5, 1935.)

JESSE MORGAN for appellant.

D. B. WOOTON for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

Something more than 15 years ago tne hazard Coal Corporation, which owns a large area of coal lands in Perry county, leased a large acreage to the Fourseam Coal Company, and it, in turn, subleased to J. P. Gorman Coal Company. The latter corporation operated what is known as "Mine No. 1," located on Buffalo creek in Perry county, for about fourteen years and until April, 1932, when it went into the hands of a receiver.

For some reason unexplained, the receiver failed to list the company's property at this mine for taxation as of July 1, 1932, and it was listed by the county tax commissioner at about $85,000. In February, 1933, the board of supervisors of Perry county fixed the value of the property for the purpose of assessment as of July 1, 1932, at a total of $65,100. This sum, however, included the value fixed on the coal lands included in the list which was owned by the Hazard Coal Corporation and had been listed by it. The receiver prosecuted an appeal from the order of the board of supervisors to the quarterly court, where the assessment was reduced and the value of the improvements fixed at $18,000 and the value of the equipment at $9,000, or a total of $27,000. An appeal was then prosecuted to the circuit court, where, after hearing the evidence, the court made the same finding as did the quarterly court, and from the latter judgment the receiver is prosecuting this appeal. On the hearing in the circuit court, the receiver and three other witnesses testified in his behalf, but the county attorney introduced no evidence.

It is insisted by counsel for appellant that there is no evidence to sustain the court's finding with respect to the value of the property since all the witnesses introduced by appellant fixed the value of the property as of July 1, 1932, at $6,000. It appears in evidence that the property in controversy was sold in December, 1933, under judgment of the court, at the courthouse door in Hazard, Ky., for the sum of $6,000, $1,800 of which was realized from the sale of merchandise, furniture, and fixtures from the commissary at the mine and the remainder for the other property. W. A. Hall, a representative of the Hazard Coal Corporation, was the purchaser and, after the confirmation of the sale, sold all the property to the Fourseam Coal Company for the same price at which he purchased the property.

The evidence discloses that he paid cash but sold the property on time. It appears from the evidence of witnesses for appellant that the improvements at the mine consisted of 99 miner's houses, a generating plant or substation, a coal tipple, etc. It further appears that there is included in the mining equipment, 5 mining machines, 6 motors, and 275 mine cars.

Jason Owens, the receiver, who has been the store and office manager of the company for about 14 years prior to the time it went into the hands of the receiver and is now with the Fourseam Coal Company in the same and other capacities, testified that the mining machines and motors originally cost about $4,000 each; that the 275 cars cost from $100 to $125 each; and that at the time the company ceased operations about 150 of them would still "roll." He was asked to fix the cost of the substation, but stated that he did not know what it cost, but that it was running when the company went into the hands of the receiver, and fixed its value at $600 or $800. None of the witnesses testified concerning the value of the tipple, but there is evidence indicating that it is a wooden structure and somewhat obsolete. Owens testified that the mine cars were worth about $5 each. There is evidence that some of these cars and machines were purchased from another company that had gone into the hands of a receiver by one of the witnesses and had been sold to the J. P. Gorman Coal Company for a very small sum. All of the witnesses testified that the miner's houses and all the improvements and equipment are dilapidated and in a very rundown condition; that the Fourseam Coal Company spent about $15,000 in repairs in order to put the mine in running condition. None of the witnesses were definite in attempting to fix the value of the miner's houses; however, they testified that there were approximately 358 rooms in these houses and that they rented at the rate of $1.50 per room per month. On cross-examination one witness was asked if there were not five or six houses worth $1,000 each. The witness replied that there was possibly one house worth that sum. As we gather from the evidence, all of these houses are cheaply constructed and have wooden foundations. One of the witnesses whose experience qualified him to speak concerning mines and mine values, and who was acquainted with mine property in the vicinity, testified as to the assessment of the property of other mines in the vicinity, and his evidence would indicate that the

value fixed by the court is high when compared with the assessments of other mines of similar capacity and equipment. The evidence shows that two of the members of the county board of supervisors were superintendents of mines and acquainted with mining affairs. The attorney for appellees refers to the value fixed on the property by the company as evidenced by previous assessments, but there is nothing in the record concerning these matters.

Counsel for appellant insists that the price for which the property was sold at the decretal sale was the best index of its value. The proper standard for fixing the value of property for the purpose of taxation as indicated in Atlantic States Coal Corporation v. Letcher County et al., 246 Ky. 549, 55 S. W. (2d) 408, and Letcher County et al. v. Kentucky River Coal Corporation, 250 Ky. 7, 61 S. W. (2d) 891, is the fair cash value estimated at the price it would bring at a voluntary sale. It is therefore apparent that the price at which the property is sold at a forced sale is not a proper criterion in determining its value for the purpose of assessment for taxation. Taking the figures of appellant's own witnesses concerning the value of various items, it will be seen that the total value of all the property is much greater than that fixed by them; however, in the absence of any evidence for appellees it is difficult to determine with any assurance of certainty or accuracy the value that should be fixed on the property as of July 1, 1932, for purposes of taxation, although it is apparent from the evidence introduced and by which we must be guided that the value fixed by the court is too high. On the whole our conclusion is that the value of all the property involved for the purpose of taxation as of July 1, 1932, was $15,000, made up of improvements at $9,000 and equipment at $6,000.

Wherefore the judgment is reversed, with directions to enter judgment in conformity with this opinion.