## Rogers v. Pike County Board of Sup'rs.

Dec. 19, 1941.

J. P. Hobson, Jr., for appellant.

Hubert Meredith, Attorney General, Joe B. Williams and J. A. Runyon for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

This appeal involves the correctness of the action of the Pike County Board of Supervisors in increasing the valuation as of July 1, 1939, of 1,775 acres of mountain land from $20,550 to $28,400; and reaches this Court through successive appeals from judgments of the Quarterly and Circuit Courts approving the finding of the Board.

The appellant had purchased the land in February, 1939, for $20,550, and in his tax return adopted this figure as representing its total value. The Board, according to a scale customarily employed by it in valueing similar properties, assessed the surface at $5 per acre ($8,875); the "coal rights" at $10 per acre ($17,750); and the "oil and gas rights" at $1 per acre ($1,775), thus bringing about the total increase of $7,850. The appellant testified that he had purchased the land at a decretal sale in accordance with an agreement with J. J. Moore, president of the Bank and Trust Company which had instituted foreclosure proceedings, that he would bid $20,500 with the understanding that the Bank would let the property go at that figure. Mr. Moore testified that both he and the mortgagor over a period of years had made numerous efforts to sell the property as a whole or in separate tracts, but without success, and that appellant had paid for the property "every cent it was worth." The property had been appraised for the sale at $23,000, and one of the appraisers introduced by the appellant as a witness testified that that sum represented his best judgment as to its value. The testimony of the appellant and Mr. Moore is convincing that the fair cash value of the property did not exceed the amount paid for it by the appellant, but, in view of the testimony of the appraiser, and in order to do full justice to the taxing authorities, we shall accept the valuation placed upon the property by the appraiser as representing the maximum price which the property would have brought at a fair voluntary sale.

Nor is there anything in the testimony of the witnesses introduced by appellee on which to base a different conclusion. None of them attempted to fix a valuation in excess of that fixed by appellant; and each of them declined to testify that the coal rights around

which the controversy centers were worth $10 per surface acre. Although it is suggested by appellee's counsel that, considering the improvements, the timber, and the value of some 35 acres of bottom land embraced within the boundary, the valuation fixed by the Board is not in excess of the actual value of the land, it is admitted that the real question at issue is the right of the Board to assess the "coal rights" at $10 per acre solely because a similar valuation had been placed on all similar rights throughout the County. In fact, we are asked to adjudge that the sole controlling requirement of the law governing valuations of property for purposes of taxation is that the valuations be uniform. In effect, we are requested to hold that the standard prescribed by Section 172 of the Constitution has become obsolete and may be ignored because of the custom so long prevalent throughout the State of valueing property for taxation at less than its actual fair cash value. From the language of its judgment it is evident that the Circuit Court did not attempt to determine the actual fair cash value of the property but upheld the valuation fixed by the Board solely because it was shown that the same method of valuation had been applied throughout the County.

In defense of the action of the Board we are cited to some of our numerous decisions holding that equality in taxation is commanded by the Constitution, and that where necessary to attain equality, the valuation of the property assessed at its full value must, on complaint of the taxpayer, be reduced to that percentage of its value at which similar properties are assessed by the taxing authority. Eminence Distillery Co. v. Henry County, 178 Ky. 811, 200 S. W. 347.

But this Court has never held, so far as we are aware, that property may be assessed for taxation *beyond* its true value in order to obtain such equality. Indeed, to do so would violate the true intent and purpose of Section 172 of the Constitution requiring that all property not exempted from taxation by the Constitution shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale. Obviously, valuation may be increased in order to secure equality only when the original valuation is less than the maximum valuation unmistakably implied in the constitutional provision quoted. Otherwise the tax-

ing authority could evade at will the limitations upon the rates of taxation embodied in Section 157 of the Constitution by the simple device of uniformly increasing the valuations of all assessable property within its jurisdiction to the extent required. Section 4047, Kentucky Statutes, specifying the oath which the assessor shall administer to the taxpayer, Section 4117, prescribing the oath to be taken by the supervisors, and Section 4053, prescribing the standard to be followed by the assessor in fixing values, may be cited as clearly indicating the intention of the Legislature that the fair cash value of property estimated at the price it would bring at a fair voluntary sale should be the controlling standard for the assessing of property for taxation to which all other considerations must yield. While absolute accuracy in establishing the value of property is impossible of attainment, and the taxing authorities, of necessity, must take into consideration many factors in reaching their conclusions, neither the constitutional nor legislative enactments may be disregarded. Among the latter is Section 4120, which provides that the Board of Supervisors shall not reduce or raise any assessment unless the evidence be clear and unmistakable that the valuation is not a fair cash value. Here, as before indicated, there was no evidence tending to show that the fair cash value of appellant's property on July 1, 1939, exceeded $23,000. Hence, neither the Board nor the Court had the power to increase the valuation for assessment beyond that amount. Atlantic States Coal Corporation v. Letcher County et al., 246 Ky. 549, 55 S. W. (2d) 408.

On May 9, 1940, the State Board of Equalization and Assessment ordered a blanket increase as of July 1, 1939, in the valuation of surface lands and town lots in Pike County, and we are asked by appellee's counsel in their brief to take judicial notice of this fact and increase accordingly whatever valuation we determine the Board should have made on the evidence presented. We are urged to overrule our decisions in the cases of Mc-Cracken Fiscal Court v. McFadden, and Reynolds v. Miller, etc., 275 Ky. 819, 122 S. W. (2d) 761, holding inapplicable to valuations for taxation established in judicial proceedings, increases in county assessments directed to be made by the State Board. Were we inclined to retract the principles announced in the decisions referred to, we should nevertheless be compelled to refuse the request, since the question is not presented

by cross-appeal, or otherwise than in appellee's brief. Moreover, our conclusion that, measured as directed by Section 172 of the Constitution, the fair cash value of the property in question did not exceed $23,000, and that property may not be assessed for taxation at a valuation in excess of its fair cash value so measured, renders irrelevant any inquiry as to the effect of state board increases on valuations fixed by judgments at less than fair cash value.

Judgment reversed for proceedings consistent with this opinion.

The whole Court sitting.