## Commonwealth v. Wood's Ex'x.

March 24, 1944.

As Corrected on Denial of Rehearing

June 2, 1944

584

Hubert Meredith, Attorney General, and J. W. Jones, Assistant Attorney General, for appellant.

Henry L. Bryant and Anderson Wood for appellee.

Opinion of the Court by Judge Thomas—Reversing.

Charles A. Wood died testate while a resident of Bell County, Kentucky, on March 22, 1933. His will devised all of his property to his widow, the appellee, Mary H. Wood. After the will was probated the widow qualified as executrix of her husband's estate. Within 18 months from his death and on September 17, 1934, she as such executrix filed a report with the State Tax Commission showing the gross valuation of her husband's estate and deductions claimed by her, which left a net valuation of $35,559.97, upon which she computed the amount of inheritance tax due from her to be $155.60 and with her report she sent her check for that amount to the Department of Revenue at Frankfort, whose duty was to collect inheritance taxes, it issuing to her a receipt therefor.

Within the proper time the Department of Revenue made an appraisal of the property of the deceased and determined therefrom that the executrix had valued certain items of the estate much below its true value as of the time of the testator's death. It therefore revalued such items and furnished plaintiff a copy thereof with the demand that she pay the balance of the inheritance tax due the Commonwealth above the $155.60, supra, which excess tax as so claimed by the Department of Revenue amounted to $644.32, the total tax as estimated by the Department of Revenue being $799.92.

The total gross valuation of the estate made by the Department was $60,683.19 credited by deductions of $2,352.34, making a net valuation for inheritance tax purposes of $58,330.85. The steps and procedure outlined consumed considerable time, and on September 29, 1937 (which was in due time) the executrix filed this action in the Bell circuit court against the Commonwealth and James W. Martin, Commissioner of Revenue, by way of appeal from the appraisement made by the Department of Revenue in which she prayed that the increased valuations made by the Department of Revenue be set aside and held for naught and that the estimate she made in her report be determined to be the true and correct one. She also claimed in her petition that the acceptance of her check by the Department of Revenue without reservations, operated as a complete settlement of all taxes due from her husband's estate, and which, as she insisted, was binding on the commonwealth. The trial court sustained the latter contention and granted the prayer of her petition from which the Commonwealth prosecuted an appeal to this court. We reversed its judgment in an opinion rendered in the case of Com. v. Wood, 289 Ky. 649, 159 S. W. 2d 403, 404, and directed that the case be remanded "for a determination of the value of the assets for inheritance tax purposes." Upon a re-trial of the case, after its remand to the circuit court, it, on January 29, 1943, rendered judgment slightly increasing the valuation of the items in contest as made by the executrix in her report to the department of Revenue and largely decreasing the valuation of such items as made by the Department in its report furnished to the executrix, and from that judgment the Commonwealth prosecutes this appeal.

The items of property of the decedent's estate, the

value of which is contested by respective litigants, consist of two pieces of real estate owned by the testator at the time of his death and some intangible property stated below. Item (1) of real estate was the home of decedent. occupying lots 11 to 16 in block 109 southeast section, Middlesboro, Kentucky, and item (2) 26.2 acres of vacant land near the corporate limits of Middlesboro, Kentucky. The value of the intangible property contested consisted of notes payable to the decedent, which. were (3) a note executed by Stella M. Brooks for $300 upon which $100 had been paid; (4) a note known in the record as the Lee Brashear note amounting to $10,000 and upon which no payments had been made; (5) an obligation of Mrs. Hollingsworth; (6) a Hambright and Collins note; (7) note of H. L. Wilson and wife; (8) one note executed by R. L. Maddox to the deceased; (9) one note executed by Mr. and Mrs. R. L. Maddox; and (10) one note executed jointly by Mr. and Mrs. Maddox.

The value of some other items of intangible property was investigated but the Commonwealth apparently concedes that the testimony as to them warranted their value as fixed by the judgment of the court, and such contested items will be treated by us as abandoned by the Commonwealth. It thus appears that the issues involved are factual ones to be determined by the evidence adduced, the controlling fact being the actual cash value of the contested items at the time of decedent's death "estimated at the prices it would bring at a fair voluntary sale," as is prescribed in section 172 of our Constitution.

In determining the crucial factual issue no detailed statement of each witness testifying thereto will be attempted, since such a course would unduly lengthen the opinion to no profitable purpose to anyone; but a limited specific reference to the testimony of appellee will be made as an illustration of the character of evidence given by her and her witnesses to sustain the judgment of the court in fixing the valuation of the property for inheritance tax purposes which, as we have seen, is substantially the same as the report she filed with the Department of Revenue. But before we attempt an appraisal of the testimony relating to the valuation of the property involved we deem it necessary to briefly dispose of two contentions made by Mrs. Wood's counsel, which are, (a) that our former opinion, supra, as con-

strued by counsel, was tantamount to an adjudication of the correctness of the values fixed by plaintiff in her report to the Department of Revenue, and (b) that the Department erroneously reduced the deductions made by plaintiff in that report disallowing some of the items made therein as improper.

Contention (a) is wholly unfounded, since our former opinion adjudicated but the one question presented on that record which was plaintiff's contention that the receipt of plaintiff's check in payment of the inheritance tax which she sent with her report amounted to a compromise of the dispute, and therefore, a complete satisfaction of the amount of taxes due from her as the beneficiary of her husband's estate, as expressly said in that opinion that the case on remand should be tried on the correct valuation of the property. With reference to contention (b) we have examined plaintiff's pleading and we nowhere find in it any attack on the deductions made by the Department, or on any of its disallowances of deductions made by plaintiff in her report. Therefore, the two indicated contentions are held to be without merit.

In testifying to the facts which plaintiff claims justified the valuation fixed by her in her report to the Department of Revenue she was asked and answered, inter alia, these questions, followed by the attached answers: "Q. Now, what were the general conditions here in Middlesboro at that time in regard to business affairs and general economic conditions? A. I think that was the darkest time I have had in my life from that standpoint; there was no business to be done because the condition of the country had made it such, that people did not go into business, could not sell, and could not buy, and I think the business generally all over the country, besides Middlesboro was pronounced by just every one as very bad. We found it so, that was during the bank moratorium, and everything was in bad condition. Q. I notice this Brooks note was to mature in 1932, do you know whether the fact that notes were past due and delinquent had anything to do with the general market value, and especially the cash value. A. Well, I don't think, Mr. Bryant, that things were salable at that time, and consequently a note would not have had its regular value."

Her other witnesses gave no stronger testimony in

support of the valuations she fixed and for which she contends, and one of them ventured the remark that "there was no market at that time," which, of course, referred to the particular date of decedent's death. It occurred four days after the lifting of the bank moratorium inaugurated to prevent disastrous runs on banks throughout the entire country by depositors seeking to check out the amount of their deposits. On the other hand the Commonwealth introduced as one of its witnesses, Mr. C. B. Weller, who appears from the record to have been a resident of Bell County in which decedent resided and wherein his property was located. The witness was at that time a Field Representative of the Department of Revenue whose duty it was to investigate and appraise property subject to inheritance taxes. Besides the knowledge he already possessed (at least partially due to his experience in the position he held) he consulted the leading citizens of Middlesboro who were familiar with the estate of the decedent, and of the persons whose notes made up a part of his estate, as well as familiar with the real estate encumbered to secure those notes. Some of the obligors testified in the case and they largely, if not completely, corroborated Mr. Weller's testimony and the conclusions he reached as to the correct valuations he embodied in his appraisement made to the Department, and which it adopted.

It will be perceived that no witness who testified in the case stated any fact supporting the depressed valuations made by plaintiff to the Department of Revenue other than the general economic conditions of the country. No sales of similar property, either realty or intangible, were referred to as establishing any market value of the character of property involved either preceding or following the death of decedent, though plaintiff did testify that her valuations in her report to the Department of Revenue corresponded in the main with the assessment for ad valorem purposes made by Mr. Wood in the year preceding his death.

Many of the notes in contest were secured—in addition to the solvency of the makers—by real estate mortgages on property of undoubted value in amounts far exceeding the amount of the incumbrances as security for the note, and many of them were paid in full before plaintiff made her report to the Department of Revenue,

the others being paid in full within a comparatively short time thereafter.

The residence of decedent was acquired a comparatively short time before his death at a price something like $15,000. There was no proof of any deterioration of it at the time of his death, but plaintiff in her report valued it at only $3,375 and the revaluation by the Board was $5,500. The 26.2 acres of vacant land near the corporate limits of Middlesboro was valued by her in her report at $900, whilst the Board valued it at $1,250. No deductions were made by the Department on the notes in contest from their face value, but they were valued at par by the Department, and some of them were drawing 8% interest and none of them less than 6%. In fact, the $10,000 Brashear note—later assumed by Dr. J. H. Brooks, who bought the business property from Brashear who executed the note as part consideration therefor—was offered to be paid by Brooks before plaintiff made her report to the Department of Revenue, but she declined to accept it because it was drawing 8% interest. She reported that note at only $3,500 valuation and the valuation of other notes made by her was below their face value in practically the same ratio.

The question, therefore, is: Whether the testimony as so briefly but substantially outlined justified the reductions made by plaintiff in her report to the Department and practically followed by the court in its judgment? Of course, the valuation for such taxes is to be made as of the day of the decedent's death, but had there been express testimony to the effect that the market value of the character of the items of property involved supporting plaintiff's report, courts would not necessarily be compelled to accept it if there was other evidence in the case showing that such valuations were erroneous. Probative circumstances—or what is known as circumstantial evidence—has ever been considered by courts as a legitimate means for the ascertainment of facts, and it is frequently considered as more convincing than direct testimony to the principal fact.

A most potent circumstance in this case is, that practically all of the involved intangible property was producing a substantial dividend in the way of interest and it was collected at 100% of its face value within a comparatively short time after decedent's death, together with all earned interest, but in some instances past col-

lected usury was deducted. In the absence of any testimony showing what such property would have brought at "a fair voluntary sale," and in view of the fact that the depreciations claimed by plaintiff are bottomed only on immediately existing economic conditions, we are convinced that the circumstances of later 100% realizations, is more potent than the bare fact of such conditions at the immediate time of Mr. Wood's death. We do not pretend to hold that, either recently prior or recently subsequent valuations should be substituted for the required valuation at the time of decedent's death, but such past and future valuations may be looked to as potent evidence bearing on and pointing to the valuation on the required date.

It is the law in this jurisdiction that the rule for fixing valuations of property for taxing purposes is the same with reference to assessments for ad valorem taxes, and valuations for inheritance taxes. See Bingham's Adm'r v. Com., 196 Ky. 318, 244 S. W. 781, and cases therein cited. The case of Atlantic States Coal Corporation v. Letcher County, 246 Ky. 549, 55 S. W. 2d 408, 409, involved the question of arriving at correct valuations for ad valorem taxes, and in our opinion we stated the correct rule to be, "in fixing the valuation of property for taxing purposes, the criterion is, not what it may be worth at some future date nor what it may have been worth in the past, but what was its fair cash value on the date as of which it is assessed." Nevertheless, the opinion considered approved evidence introduced at the trial of that case showing both prior and past valuations as developed by actually occurring facts, to wit: the price paid by the taxpayer in acquiring the property, and the one which he later sold it for, both of which were, of course, approvingly regarded as circumstantial evidence tending to fix the value as of the required intervening date. Many other cases where the same practice was approved could be cited, there being none to the contrary.

To adopt the contention made in behalf of plaintiff would close the door in such cases to the admission of all character of circumstantial evidence, and, in effect, limit and confine the proof fixing the valuation to the precise moment pointed out by the law; but which if adopted would frequently result in the property having no valuation at all, since there might be no market for it at the

particular moment of the assessment date. An extreme illustration would be where the taxed property is a building in a built up square in a city and a destructive fire in the same square was approaching it but the owner died between the time of the starting of the fire and its extinguishment. While the fire was raging and at the moment of the owner's death his property would possess but little, if any, market value; but surely the law never intended that the public revenue should be made to suffer by any such strict construction. Other extreme illustrations could be given, but they are no more extreme than the insistences of plaintiff in her effort to fix the valuation at the very moment of her husband's death. The intention was to ascertain the actual valuation of the property at a fair voluntary sale as of the prescribed time, but not to deprive the taxing authority of the necessary revenue to run the government, because, forsooth, on the particular moment or day a purchaser who might desire and would purchase the property at its fair cash value if he could gain access to the cash he owned with which he might pay the price, but could not at the moment the tax became due. As we have said, the moratorium in this instance, was lifted four days following decedent's death.

Upon the whole we are convinced that the appraisement made by the Department of Revenue was correct in all respects, except one (which is admitted in brief of its counsel) which is the assessment of one of the Brooks notes at $300 when $100 had been paid on it, reducing the tax valuation to only $200 as to that item.

Wherefore, the judgment is reversed with directions to enter one affirming the valuation made by the Department of Revenue, with the correction of the $300 Brooks note, and for proceedings not inconsistent with this opinion.

The whole Court sitting.