Russell **FITZPATRICK** et al., etc.,
Appellants,

v.

Mrs. Bruce **PATRICK**, Clerk of Montgomery County Court et al., etc., Appellees.

Court of Appeals of Kentucky.

Dec. 13, 1966.

Lewis A. White, Mt. Sterling, Joseph J. Leary, Frankfort, for appellants.

William S. Riley, Asst. Atty. Gen., Larry A. Carver, Legal Staff, Dept. of Revenue, Frankfort, for appellees.

CULLEN, Commissioner.

The appellants, who are owners of farm property or rural nonfarm property in Montgomery County, Kentucky, brought this action for themselves and others similarly situated, against the county court clerk and the sheriff of the county, alleging that by reason of a blanket fifteen-percent increase by the Department of Revenue in the assessment of farm and rural nonfarm property in Montgomery County the property of the appellants has been assessed at a value in excess of fair cash value. The complaint asked for a declaration of rights and for injunctive relief. After permitting the Commissioner of Revenue to intervene the circuit court dismissed the action, wherefore this appeal.

The crux of the appellants' complaint is that their properties were assessed at full cash value prior to the equalization increase by the Department of Revenue (they say the properties all were purchased within a few months of the 1966 assessment date and were assessed at the purchase price); that the increase results in unconstitutional assessments, above fair cash value; and that no administrative remedy is or has been available to them. The circuit court dismissed the action on the grounds that (1) the action was not maintainable as a class action, (2) the plaintiffs were not entitled to injunctive relief, and (3) the court was without jurisdiction. The appellees·assert, as an additional ground supporting the dismissal, that the complaint did not state a claim upon which relief could be granted.

In our opinion the action properly is maintainable as a class action. The argument of the appellees on this point (which apparently was accepted by the cir-

cuit court) is in essence that the action does not seek "common relief," which is one of the requirements set forth in CR 23.01. They argue that the proof as to the assessed value of each claimant may be different, and the *amount* of relief obtainable, by way of exoneration, will vary. We agree that ultimate relief in the form of actual exoneration cannot be awarded in this action to any claimant who is not individually a party, because such relief would not be common. But the only relief *sought* in the action as to the unnamed class members, i. e., a *declaration of rights* and an injunction against collection of the amount of alleged excess tax against any person who asserts and proves that his assessment is above fair cash value, *is common.*

It appears that the ruling of the circuit court that the plaintiffs were not entitled to injunctive relief was based on a belief either that the plaintiffs had an adequate remedy at law or that the injury the plaintiffs might suffer would be minor compared with the damage that would result to the local governmental units from being barred by injunction from collecting a substantial portion of the 1966 tax levy. We considered it appropriate to direct that a temporary injunction be issued pending this appeal because a serious question existed as to whether the plaintiffs had any remedy at all, and ,if so whether it properly was through judicial or administrative processes. The nature of the injunction was not such as to create a major financial problem for the governmental units involved. We have concluded, as hereinafter we shall more fully explain, that a remedy through administrative processes can and should be made available; that such remedy, if it had been made available at the proper time, would have been adequate, but that at the present stage of the tax levy procedures it will not be adequate unless implemented by temporary injunctive relief; and that the type of injunctive relief required will not cause substantial hard-

ship to the tax-levying local governmental units.

The ruling of the circuit court that it was without jurisdiction seems to have been in acceptance of the appellees' contention that the plaintiff taxpayers could have appealed to the Board of Tax Appeals from the equalization order of the Department of Revenue, and that this was an exclusive remedy. There are at least two answers to this contention. In the first place, KRS 131.340(2), governing appeals to the Board of Tax Appeals, authorizes appeals only by a "party." Obviously, this means persons or agencies who are formally recognized participants in the proceeding before the Department of Revenue, not merely unhappy people. Cf. Ray v. Luckett, Ky., 332 S.W.2d 848. Certainly it does not mean persons who are not given any notice of the order to be appealed from. Cf. Ashland Lumber Company v. Williams, Ky., 411 S.W.2d 909 (decided October 21, 1966). In the second place, the plaintiffs here are asserting that their constitutional rights are being violated by virtue of a lack of administrative due process—certainly the court had jurisdiction of that issue.

As hereinbefore noted, the appellees maintain that the complaint did not state a claim upon which relief could be granted. This is based upon the somewhat astonishing proposition that assessing a person's property in excess of its fair cash value does not infringe any constitutional right of that person. In support of this proposition the appellees cite Ray v. Armstrong, 140 Ky. 800, 131 S.W. 1039. We think the support is not there. As we read the cited opinion it holds only that a blanket, equalizing, assessment increase is not rendered *void* by the fact or possibility that one or more properties thereby may be assessed at more than fair cash value. It certainly does not hold that a taxpayer whose property has been assessed at more than fair cash value, as a result of a blanket increase, *has no remedy.* Assessment of property beyond fair cash value violates the Ken-

tucky Constitution. Rogers v. Pike County Board of Supervisors, 288 Ky. 742, 743, 157 S.W.2d 346. Obviously the taxpayer is entitled to a remedy, at some stage of the assessment proceedings, against such a violation.

■ As we construe the statutes dealing with assessment equalization by the Department of Revenue, KRS 133.150 to 133.170, they do not in terms provide any method by which an individual taxpayer may be protected against assessment of his property above fair cash value in the equalization process. Nor has the department construed the statutes as providing any such method. However, we think that the statutes must be construed as necessarily contemplating, to avoid unconstitutional action and to accomplish the overall objective of equalization, that the individual taxpayer be afforded an opportunity for a hearing and for appellate review. Cf. George v. Scent, Ky., 346 S.W.2d 784; Atlantic Coast Line R. Co. v. Commonwealth, 302 Ky. 36, 193 S.W.2d 749.

■ In our opinion the following procedures reasonably may be considered to be within the contemplation of the equalization statutes:

1. The notice to "the taxpayers" of a contemplated blanket raise of assessments, provided for in KRS 133.160, would state that any individual taxpayer who believed that the proposed raise would increase his assessment above fair cash value could file with the Department of Revenue, on or before the day of hearing fixed in the notice, an application for exoneration of his property from the proposed increase. In addition to being posted, as provided in KRS 133.160, the notice would be published as required by KRS Chapter 424.

2. At the hearing provided for in KRS 133.160, or at any necessary adjourned session thereof, any taxpayer who duly had filed application for exoneration would be entitled to be heard and present evidence in support of his claim that the blanket increase would cause his property to be assessed above fair cash value.

3. The Department of Revenue, when it certified its action on assessment equalization to the county judge, as provided in KRS 133.170, would simultaneously mail a notice to each taxpayer who had made application for exoneration, stating whether the application had been granted or denied, either in whole or in part.

4. Any taxpayer whose application had been denied, in whole or in part, could appeal to the Board of Tax Appeals as provided in KRS 131.340, and appeals thereafter could be taken to the courts as provided in KRS 131.370.

We think the foregoing procedures would provide adequate remedy against overassessment in future tax years resulting from a blanket equalization increase. But we have a problem here in Montgomery County involving the current tax year. A practical solution of the problem would be for the Department of Revenue to schedule a special hearing to be held in Montgomery County, with the procedural features above outlined, for consideration of applications for exoneration. It is our opinion that the department has the power to do that, and thus would be provided a satisfactory administrative form of remedy. If the department does not promptly make that remedy available, by scheduling a hearing within 30 days of the entry of judgment in the circuit court pursuant to the mandate of this court on this opinion, the circuit court then shall provide a judicial remedy, by scheduling a judicial hearing at which claims for exoneration may be asserted by the named parties to this action and by such other persons as may intervene in the action prior to the day of hearing.

The circuit court will enter a declaratory judgment in conformity with this opinion. That judgment will continue in effect the

provisions of the temporary injunction heretofore issued by this court, with the modification that on the day set for the exoneration hearing, whether the hearing is administrative or judicial, the sheriff shall turn over to the appropriate taxing units the amount withheld by him as to any taxpayer who has not presented an application for exoneration. As to any taxpayer who has filed application for exoneration the sheriff shall continue to hold the amount of disputed tax until final determination of the exoneration claim, whereupon it shall be paid over to the taxing units, or returned to the taxpayer, as the case may be.

The judgment is reversed with directions for the entry of judgment in conformity with this opinion. The court finds that good cause exists for immediate issuance of the mandate and therefore orders that the mandate issue forthwith.