## Latonia Refining Corporation v. Dusing.

(Decided Dec. 6, 1932.)

GALVIN & TRACY for appellant.
ROBERT C. SIMMONS for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

The Latonia Refining Corporation is appealing from a judgment against it in favor of Joseph Dusing for $1,850 as damages arising out of the pollution of Bank Lick creek, which flows through lands in the possession of and occupied by the latter.

By his petition filed December 20, 1930, as subsequently amended in support thereof and by proof, appellee made it appear that his father, H. Dusing, owns a tract of about 96 acres of land in Kenton county, made up of two boundaries and through which Bank Lick creek flows. Pursuant to an agreement made with his father in April, 1920, appellee took possession of the tract of land with the right to its use and control so long as his father might live, but subject to the right of the latter to live upon the farm with appellee. The land is improved by a substantial residence and two large barns, one of which is a dairy barn. After moving to the farm, appellee engaged in dairying and had about 40 head of dairy cattle. His residence is about 450 feet from the creek, and above the residence and other improvements there is a riffle or shoal which is used as a ford in crossing from one portion of the farm to the other. Above the riffle the creek is shallow and

there is no way to get water to live stock or to supply the house or dairy from above that point. Below the riffle and for several hundred feet to the property line of the Dusing land, the stream is 30 feet wide and in normal times is 14 feet deep in places. During the extreme drouth of 1930 it was at least 4 feet deep from the riffle down to the property line. Prior to the alleged pollution of the stream, water for live stock and for use at the house and dairy was procured from the creek below the riffle. Ordinarily the live stock could get to the water from the pasture on that side of the creek, but when they could not, water was pumped from that part of the creek into the watering troughs.

Appellant has a refining plant on a tract of land on the creek below but adjoining the Dusing farm. In its processes of refining, appellant uses vast quantities of water, some of which is piped from the water system of the city of Covington. It is necessary to supplement this supply with water pumped from the creek, all of which after being used is turned back into the creek charged with more or less oil or other foreign substances.

It is alleged that from August, 1929, an oil scum of considerable thickness formed all over the surface of the creek up to the riffle, causing the water to become so discolored and polluted as to render it unfit for consumption or for any of the purposes hereinbefore indicated, a condition which continued up to the filing of an amended petition on February 9, 1931; that this scum and decaying matter gave off disagreeable, pungent, and noisome odors; that it was highly inflammable and became ignited, causing danger from fire to the dwelling and other buildings and discomfort and apprehension from such danger. By reason of the pollution of the stream and in order to secure a sufficient supply of water, it was necessary for appellee to lay and connect pipes with the water system of the city of Covington at a cost for labor and materials, etc., of something over $1,127. It was alleged that plaintiff had been damaged in the diminution of the use and enjoyment and the rental value of the premises in the sum of $10,000, and altogether and including the cost of installing water pipes in the sum of $11,127.

The court sustained the motion to strike from the petition the allegations as to the inflammability of the

scum on the creek and the discomfort and apprehension of danger from that condition.

By answer, appellant controverted the allegations of the petition, and as an affirmative defense alleged that during all the time referred to in the petition there existed a continued drouth which in severity exceeded anything within the memory of living man, and by reason of which the creek became practically dry and would have become dry but for the water emptied into it from appellant's plant; and that if any of the conditions complained of in the petition existed, such conditions were due solely and alone to an act of God and not to any act of appellant.

The issues were completed by reply controverting the affirmative matter in the answer. In addition to what we have already said, the evidence clearly indicated that the stench and odors arising from the scum and putrid matter on the creek was such as to materially interfere with the comfort and enjoyment of the use of appellee's premises. In fact, it caused headaches and other illness, and often, especially during mealtime, it was necessary to close the windows of the residence. Appellee and a number of other witnesses went into detail in describing the conditions complained of. It is shown that during heavy rains the scum would be carried off, but in short time would again accumulate, and that it remained all the time during the prolonged drouth of 1930.

Appellant introduced but one witness, Mr. E. A. Brown, superintendent of the plant during the years 1929-30. He stated that he often observed the creek up to the riffle and never noticed any scum during the year 1929; however, he admitted that Mr. Dusing made some complaint to him that cattle would not drink the water, and he further stated that during the drouth of 1930 he saw scum on the creek nearly up to the riffle.

In brief for appellant it is said:

"That some oil from the refinery got into the water of the creek; that this oil not finding a way out down the stream backed up into defendant's land, and that there was a smell of oil which plaintiff claimed was disagreeable, is all very true."

In view of this admission on part of appellant's counsel and what has already been said as to evidence support-

ing the allegations of the petition, we deem it unnecessary to go into further detail as to proof of the condition that existed, except possibly some necessary reference to items of evidence in a discussion of the grounds urged for reversal.

The first ground argued by counsel for appellant is that it is not liable because the condition complained of was caused solely by the act of God. It is not denied that water used in appellant's refinery and turned back into the creek was contaminated with oil, but it is claimed that in normal times this was carried off by the creek, but on account of the severe drouth it accumulated on the surface and backed up onto appellee's premises. So it will be seen that appellant admits emptying water charged with oil and other deleterious substances into the cheek, but attempts to justify itself and avoid liability on the ground that Providence with- held the usual and necessary rainfall, thereby permitting these substances to accumulate in and on the water.

In Licking Rolling Mill Co. v. Fischer, 7 Ky. Law Rep. 587, 602, 609, 8 Ky. Law Rep. 89, it is said:

"The act of God signifies any inevitable accident occurring without the intervention of man, which no industry can avoid nor policy prevent. * * * To invoke the protection of this maxim one must be without fault. He cannot actively provide the conditions of a disaster and then claim that it is the act of God."

It has also been held that notwithstanding the fact that lightning is an act of God, one whose negligence cooperates with the lightning to bring about the injury will be held liable, as the injury would not have occurred but for such negligence. Cohen & Stryck v. Home Tel. Co., 179 Ky. 107, 200 S. W. 344, and cases therein cited.

It is indicated by appellant that it could not have operated its plant otherwise than it did; that the emptying of water containing some oil into the creek was an incident necessary to its business, and that owners of adjoining property must yield to some inconveniences caused by its use of its own property. While there are some cases holding that individual rights must yield where the business is of such character that it must be conducted where nature has located it, or where in the

very nature of things public necessity requires that it should be, it is pointed out in the case of Weston Paper Co. v. Pope, 155 Ind. 394, 57 N. E. 719, 56 L. R. A. 899, no court has gone so far as to recognize the right of a manufacturing establishment to pollute nonnavigable streams on which it may be located and in conducting a business wholly brought to the place and in no way connected with the use of the land itself.

Argument is further made that instruction on the measure of damage is erroneous in that it permits recovery for diminution in the value of the use of the property when it is shown that appellee was not the owner, and further because the instruction authorizes recovery for the appurtenant use of the creek for stock water.

As to the first objection directed at this instruction, it may be said that appellant is in no position to complain since it offered an instruction on the measure of damage, authorizing a finding in ''such sum of money as will fairly and reasonably compensate him for the diminution, if any, in the value and use of said property, occupied by him as described in the proof.'' Futhermore, it has been held by this court that where the condition complained of is temporary, the measure of damage is the diminution in the value of the use of the property during the time the condition continues. Long v. L. & N. Ry. Co., 128 Ky. 26, 107 S. W. 203, 32 Ky. Law Rep. 774, 13 L. R. A. (N. S.) 1063, 16 Ann. Cas. 673; City of Henderson v. Robinson et al., 152 Ky. 245, 153 S. W. 224, 227; Gay v. Perry, 205 Ky. 38, 265 S. W. 437; Vaughn v. City of Corbin, 170 Ky. 426, 186 S. W. 131. These cases clearly indicate that the rule is the same without respect to whether the complaining party is the owner or is in possession and entitled to the use of the property as lessee or tenant.

In the case of City of Henderson v. Robinson et al., supra, wherein one of the complaining parties was the owner and the others were merely renters of the land occupied by them, the court, in reversing the case, indicated that in lieu of the instruction given in the former trial, the trial court should give instructions set out in the opinion including an instruction on the measure of damage which permitted recovery for diminution in the value, use, comfort, and enjoyment of the land and homes occupied by complainants and also ''for the

diminution, if any, in the value of the appurtenant use of the creek for stock water.''

Finally, it is argued that the verdict is flagrantly excessive with no proof whatever warranting the amount of it. The court by instruction limited the amount that might be recovered by appellee to the sum of $1,850, but it does not appear in the record why recovery was so limited, and counsel for respective parties indicate that they do not understand the theory on which the court fixed this amount. Evidently these figures were in some way derived from proof as to the difference in rental value of premises before and after the injury complained of, and perhaps also evidence as to the expenses incurred in procuring water from the city water system. To say the least, the instruction in that particular is as favorable to appellant as it could ask or expect. While no instruction was given as to diminution of rental value, the court did permit evidence on that question bearing, as we assume, on the question of the value of the use and enjoyment of the property; and as already indicated, the evidence for appellee sustaining his allegations as to the expense in securing a necessary supply of water is uncontradicted.

Taking into consideration all the evidence bearing on the question of diminution in the value of use and occupancy of the premises and the appurtenant use of the water from the creek, no doubt is left as to the sufficiency of the evidence to sustain the verdict, and there is nothing to indicate that the jury was moved or actuated by passion or prejudice, which must appear before this court is authorized to disturb a verdict as excessive.

Judgment affirmed.