## Kenmont Coal Co. v. Perry County Board of Sup'rs et al.

(Decided Feb. 21, 1936.)

CRAFT & STANFILL for appellant.

D. B. WOOTON and JESSE MORGAN for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming in part and reversing in part.

From a judgment fixing the value of its property for taxation at $69,940, the Kenmont Coal Company has appealed. The Perry county board of supervisors and Perry county have prosecuted a cross-appeal and are asking this court to fix the taxable

value of this property at $116,430, the value put upon it by the board of supervisors and by the Perry quarterly court.

## How Shall Value be Determined?

The Kentucky Statute, sec. 4053, and our Constitution, sec. 172, both require that this property be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale. That value, we have decided, is the price which would be agreed upon by a party who desired to, but was not compelled to buy it and an owner who desired to, but was not compelled to sell it.

In a recent opinion rendered in Carr's Fork Coal Company against this same appellee, —— Ky. ——, —— S. W. (2d) ——, we pointed out that the value of the various parts of a property such as this have an interdependent relation and their value must be very largely determined from a consideration of the property as a whole for it is not proposed to chop this property into parts and consider the value of each of the so separated parts, but to consider the property as a whole, and where it is necessary to fix the value of a particular part, to do so from a consideration of it as a part of the whole and of its contribution to the value of the whole, as well as the effect of the value of the whole or any of its other parts upon the value of the particular part, the value of which is sought to be separately determined.

## What Was Done.

At this point we think it better to state in column 1 the items involved, then in column 2 the value put upon them by the Kenmont Coal Company, in column 3 the value fixed by the board of supervisors, which the appellees by cross-appeal are seeking to have this court reinstate, and in column 4 the value fixed by the circuit court from which this appeal is prosecuted:

| | | | |
|---|---|---|---|
| Lease | $ 500 | $ 12,000 | $ 2,500 |
| Improvements | 9,348 | 56,000 | 45,000 |
| Live Stock | 40 | 40 | 40 |
| Equipment | 13,008 | 40,390 | 20,000 |
| Merchandise | 2,400 | 8,000 | 2,400 |
| Total | $25,296 | $116,430 | $69,940 |

The Kenmont Coal Company does not own the real estate on which it has this property and conducts its mining operations. That is owned in part by the Alimar Coal Corporation and in part by the Colony Coal & Coke Corporation, and the Kenmont Coal Company operates upon property it has leased from them. It originally leased from the first named 1,216.54 acres of coal land, and from the second 860.15 acres of coal land and 251.60 acres of surface rights on which it has its mining plant. By exploration and mining it has ascertained that only 1,191.17 acres of the territory leased ever had coal on it, and upon this the company has been mining for twenty years and this coal field has but 150 acres of unmined coal in both Knott and Perry counties. It is burdened by heavy minimum royalties, $7,500 to the first-named lessor and $6,000 to the second, but for fear of killing the goose that lays the golden eggs these lessors have recently reduced these royalties to about $10,-000 per year. This royalty is payable monthly, and by the terms of the lease if it is not paid the lessor may enter, seize, and sell whatever the Kenmont Coal Company has there. The small amount of coal yet unmined prevents the mining of a large tonnage because the space available for a large operation is not there, and the time is rapidly approaching when the property will be exhausted and whatever appellant has there must be sold as junk and what it has is rapidly approaching that condition for another reason, to wit, the operation of time. For example, over twenty years ago, it built a number of houses of cheap frame construction, and roofed with paper. Those houses are rapidly losing value both by the wear and tear of use, the lapse of time, and the fast coming exhaustion of the field.

The Kenmont Coal Company in assessing these things put them at practically a junk value. The taxing authorities say it may be true that is all any particular article would bring at a fair voluntary sale, but it is worth more than that to the Kenmont Coal Company as part of its operating mine. That is like the old man sitting in his easy chair that is worn and perhaps held together by wire here and there, yet to him it is as comfortable and useful as it was forty years before when he paid $20 or $25 for it, but when it is offered for sale after his death it will perhaps

bring 20 or 25 cents. The chair did not retain its first value through the years and lose it when the old man died. It lost value day by day and that is true of this equipment. It has lost value by use, resulting wear, deterioration, obsolescence, and the rapidly coming time when it will be but junk.

## The Evidence.

The testimony of the three witnesses for the coal company fully sustained the values fixed in column 2 above. One of them, Mr. English, took the matter up item by item and there were more than seventy-five different items and gave the value of each item. Some of the items looked ridiculously low, but in response to questioning the witness would tell of recent sales where similar property brought less money.

The county introduced Mr. J. B. Allen, the engineer who installed this plant, and he testified it cost approximately $110,000 to install it, and he testified to betterments and additions made later, but when he was asked on cross-examination to say what the plant would bring at a fair voluntary sale on July 1, 1932, taking it just as it was on that date, he answered $20,000.

The county judge testified the property was fairly worth $116,430, the figure he had fixed when sitting as judge of the quarterly court, and the county assessor testified to the same effect. They arrived at their figures by making comparison with other mines. Neither could tell of the sale of a similar property in the last ten years.

## Our Conclusion.

The fact that no coal property was selling does not mean that no coal property had any value. There was simply no market, but if a buyer had come along, he would not have been able to buy this property for a song.

We went over the various items of this company's property and fixed values on them as best we could from what light the evidence gave us and our own knowledge then added these and took off a few dollars for possible error, and our conclusion is that $45,000 is a fair list for this company's property, and we have distributed this as follows:

| | |
|---|---:|
| Lease | $ 1,500 |
| Improvements | 14,100 |
| Livestock | 40 |
| Equipment | 26,960 |
| Merchandise | 2,400 |
| Total | $45,000 |

This stock of merchandise is not affected by the approaching exhaustion of the coal, it is worth as much an any other similar stock and will be turned over many times before exhaustion comes, but we are unable to find any evidence to justify a change in the finding of the chancellor.

The equipment, and this means mine cars, gathering motors, coal cutting machines, and other movable property, is affected by the exhaustion of the seam for it must then be sold as junk, but that time has not yet come and we feel it is now worth far more than junk price. We passed the live stock. The permanent improvements are structures affixed to the realty, as houses, tipple, etc. The evidence is the company must leave these things as they are when this coal is exhausted, so they will then have no value, but just now they are being used, are paying returns, and are far from valueless. The coal in place or the lease we feel is not worth anything like the sum found in the judgment. It will be affected by its own exhaustion, also by its own diminution, resulting in a steady curtailment of production because of ever lessening number of working spaces, yet it is this coal in place that gives the value to the remaining property.

Judgment affirmed on cross-appeal and reversed on original appeal for judgment as indicated.