## Evans v. Allen et al.

## Evans Oil & Gas Co. v. Same.

October 31, 1947.

William B. Ardery, Judge.

Wells & Wells for appellants.

Carl D. Perkins and Roy W. House for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

E. J. Evans and Evans Oil & Gas Company are appealing from judgments of the Franklin Circuit Court fixing the value of their land in Knott County for the purpose of assessment for taxation for the year 1944. The two appeals have been consolidated, and will be disposed of in one opinion.

E. J. Evans owns 14,165 acres of land in Knott County, and Evans Oil & Gas Company owns 6,827 acres of land and the mineral rights in 3,888 acres in the same county. E. J. Evans listed his land with the tax commissioner of Knott County at $2.50 an acre, or a total valuation of $35,412. The tax commissioner of Knott County fixed the valuation for tax purposes at $56,660, and the Knott County Board of Tax Supervisors increased the valuation to $10 an acre, or $141,650. Evans appealed to the Kentucky Tax Commission, and it reduced the valuation to $6.50 an acre, or $92,072. Evans then appealed to the Franklin Circuit Court which approved the order of the Kentucky Tax Commission. Evans Oil & Gas Company listed the land which it owned in fee at $3 an acre, or a total of $20,481, and the mineral rights in 3,888 acres at $2.50 an acre, or a total of $9,720. The Knott County Board of Tax Supervisors fixed the valuation of the land owned in fee at $29,672,

and the valuation of the mineral rights at $32,328. The Company appealed to the Kentucky Tax Commission which increased the valuation of the land owned in fee to $6.50 an acre, or $44,375, and reduced the valuation of the mineral rights to $2.50 an acre, or $9,720, the amount at which it had been listed by the owner. On appeal to the Franklin Circuit Court the order of the Kentucky Tax Commission was approved, and the appeal dismissed.

E. J. Evans purchased in June, 1944, from Clinton M. Harbison, trustee in bankruptcy of the Carbreath Gas Company, the 14,165-acre tract. The price paid was $3 an acre. Evans Oil & Gas Company purchased from the Virginia-Kentucky Coal Corporation on October 1, 1944, 10,715 acres for $3 an acre. The grantor owned 6,827 acres of this land in fee and the mineral rights in 3,888 acres. The valuation of the mineral rights in the 3,888-acre tract is not involved on this appeal since the Kentucky Tax Commission fixed the value at $2.50 an acre, the amount at which it was listed by the owner. E. J. Evans is president and owner of the Evans Oil & Gas Company. It is conceded that the two tracts are of the same general character and value and consist of wild, mountainous and uncultivated land. The largest estimate made of bottom land available for agricultural purposes was 100 acres. The land is located 30 or 40 miles from the nearest railroad, and there are no highways of consequence in the vicinity. The evidence introduced before the Tax Commission shows that there is no net revenue from the property after the payment of taxes. The only revenue consists of rentals from several tenants who pay from $10 to $25 annually for the use of the cabins occupied by them. It is conceded that these cabins are of little value. The principal value of the land consists of whatever timber and minerals may be on or under it. Practically all of the merchantable timber was cut by the Dawkins Log & Mill Company prior to 1928, and the merchantable second growth timber and any virgin timber not cut by the Dawkins Log & Mill Company on at least one of the tracts was sold before the land was purchased by appellant and is now being cut and marketed. There was some proof that the Dawkins Log & Mill Company cut only the oak, poplar, ash, elm and pine and did not cut

the spruce, hickory and beech timber, and that there is now some second growth oak and poplar timber of merchantable size. Floyd Watkins, a witness for the appellee, testified that there was second growth timber of merchantable size on the land, and that this and the virgin timber left by the Dawkins Log & Mill Company was then being cut and marketed from the land. However, there was no denial of E. J. Evans' statement that this timber had been sold prior to his purchase of the property and that he has no interest in it. There was proof that the land had not been thoroughly explored for oil and gas but nine wells had been drilled. Seven of these were dry holes and two were small producing gas wells. There are a few seams of coal on the land, but they are thin, have slate partings. and the coal is of inferior quality. According to the weight of the evidence, the coal has no present and little, if any, potential value. Alonzo Allen, a member of the Knott County Board of Tax Supervisors, testified that in his opinion the fair market value of the land as of July 1, 1944, if divided into small tracts, was $12 an acre. One or two other witnesses fixed the value even higher, but all based their opinions principally on the value of the timber supposed to be on the land and on the condition that the land be sold in small tracts. There was no evidence that the land has any value for agricultural purposes. Apparently neither the Tax Commission nor the Circuit Court gave any weight to the actual sale price.

Section 172 of our Constitution provides that ''All property, not exempted from taxation by this Constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale.'' We have defined that value as the price which would be agreed upon by a party who desired to, but was not compelled to buy the property and an owner who desired to, but was not compelled to sell it. Kenmont Coal Company v. Perry County Board of Supervisors, 262 Ky. 764, 91 S. W. 2d 47. Here, we have actual sales of the property near the assessment date, and there is no evidence that either sale was not fair and voluntary. The 14,165-acre tract was purchased by E. J. Evans in June, 1944, less than one month before the assessment date, and the 6,787-acre tract was purchased by the Evans Oil & Gas Company shortly after the as-

sessment date, though the deed was not executed until October 1, 1944. The consideration for both tracts was $3 an acre. The larger tract belonged to the Carbreath Gas Company, and was sold during the pendency of a bankruptcy proceeding. It had been advertised for sale extensively for more than a year when timber and mineral lands were in strong demand, and the highest offer received prior to the offer of E. J. Evans was $2 an acre. Mr. John L. Davis, an attorney of Lexington, Kentucky, represented the trustee in bankruptcy, and he testified at length concerning the efforts made to sell the property. The Federal Court approved the sale only after an extensive hearing as to its value and after two creditor committees had recommended acceptance of the Evans offer. The smaller tract was purchased from the Virginia-Kentucky Coal Corporation, a solvent company, which had extensive holdings of coal lands in Kentucky, Virginia and West Virginia. It gave Evans an option on the land for $4.50 an acre, but after making an investigation he declined to exercise the option. He later made an offer to the company of $3 an acre which it accepted. Evans testified that he gave the Kentucky River Coal Corporation, the owner of a large acreage in Knott and neighboring counties, an option on the land for $3 an acre, but after examining the property the company returned the option.

The sale price of property is not, under all circumstances, the sole criterion for the guidance of the assessing authority in fixing the value for taxation purposes, but where the property is sold at or near the assessment date and the sale is fair and voluntary the sale price is the best evidence of the property's "fair cash value, estimated at the price it will bring at a fair voluntary sale." Appellees cite Prestonsburg Water Company v. Prestonsburg Board of Supervisors, 279 Ky. 551, 131 S. W. 2d 451, as holding that the sale price is not conclusive of the value of property for tax assessment purposes. There, the company appealed from a judgment fixing the value of its water plant and property for the purpose of assessment for taxation for the year 1935 at $60,000. The company had purchased the plant in 1929 for $60,000, and had spent $40,000 for improvements. Due to business and other conditions there were no purchasers for the plant in 1935 and no bona

fide offer had been made since its sale in 1929. Under these circumstances it was said by this court that the amount paid in 1929 and spent thereafter for improvements was not a proper criterion for fixing the fair market value of the property as of July 1, 1935, but was one of the elements that might be considered in determining such value. This court fixed the value as of July 1, 1935, at $45,000. In Westova Gas Company v. Knott County Board of Supervisors, 246 Ky. 334, 55 S. W. 2d 23, property assessed for taxation as of July 1, 1929, had been purchased on June 11, 1929. The Board of Supervisors fixed the value for the purpose of taxation at an amount in excess of the sale price, and on appeal by the owner the assessment was approved by the Quarterly and Circuit Courts. This court found there was no showing that the sale of June 11, 1929, was not in good faith and that no fact or circumstance was presented by the evidence tending to show there was any change, increase or fluctuation in the fair cash value of the land between the date of the sale June 11, 1929, and the assessing date July 1, 1929. It was held that the owner had listed the land at its fair cash value, and the judgment was reversed. In the course of the opinion the court said: "Arbitrarily fixing the valuation for taxation of any property within the state by any method which results in assessing it for taxation in excess of its fair, cash value, 'estimated at the price it would bring at a fair voluntary sale,' is without the intendment and purpose of both the Statutes and the Constitution."

That property may not be assessed for taxation beyond its true value in order to obtain equality with other property so assessed see Rogers v. Pike County Board of Supervisors, 288 Ky. 742, 157 S. W. 2d 346.

Some of appellees' witnesses say that the property might sell at a higher price if divided into small tracts, but from their description of the property this could be true of only a small fraction of the two tracts. Practically none of the property is agricultural land, and the weight of the evidence is to the effect that land of this character sells to better advantage when sold in larger tracts. Here, two tracts of land similar in every respect were purchased from different owners at the same price per acre, one just before and one just after the time of assessment. Both sales were made after

734

extensive negotiations, and there is no evidence that either was a sacrifice sale. The evidence compels the conclusion that the price paid in each instance represented the property's "fair cash value estimated at the price it would bring at a fair voluntary sale." The appellant, E. J. Evans, listed the 14,165-acre tract at $2.50 an acre and the 6,827-acre tract at $3 an acre. It is admitted by all parties to these appeals that the two tracts are of the same value per acre, and it follows that both tracts should have been listed and assessed at the same valuation, that is, $3 an acre.

Both judgments are reversed with directions to render one in each case fixing the valuation of the land as of July 1, 1944, at $3 an acre.