**ALLIED CHEMICAL CORPORATION, Individually and as Agent for Kingwood Oil Company, etc., et al., Appellants,**

v.

**UNION COUNTY BOARD OF SUPERVISORS, etc., et al., Appellees.**

Court of Appeals of Kentucky.

June 14, 1974.

James V. Marcum, Ashland, for appellants.

William S. Riley, Asst. Atty. Gen., Norris A. Harmon, Attorney, Legal Staff, Dept. of Revenue, Frankfort, for appellees.

STEPHENSON, Justice.

This is an appeal from a judgment of the Union Circuit Court affirming an order of the Kentucky Board of Tax Appeals fixing the value for ad valorem tax purposes of certain mineral properties [1] owned by appellants. We reverse.

The appellants were the successful bidders for the mineral rights (except coal) underlying eight tracts of what was then Camp Breckinridge. The nature of the sale by the General Services Administration was that of submitting "sealed bids" within a period of about two months. After the sale in April, the appellants conducted further exploration and evaluation of the properties by actual drilling and testing, and on the next January 1 listed the properties at a figure considerably below the sale price. The county tax commissioners declined to accept appellants' valuation and listed the properties for the full amount of the sale price. The appellants appealed the assessment to the Kentucky Board of Tax Appeals.

1. The properties are in Union and Webster Counties. The two cases were consolidated in Union Circuit Court.

At the hearing before the Board of Tax Appeals, the county tax commissioners relied entirely on the sale price paid for the properties in the month of April preceding the assessment date as being the fair cash value and did not offer any further evidence. The aggregate sale price amounted to $24,747,743.

The appellants introduced a number of expert witnesses. In general the appellants' evidence was that due to the limited time allowed for exploration the bids were highly speculative. After the sale date in April, the appellants exchanged information, which they had not done before, and, during the period before January 1, engaged in further drilling and testing of the properties. Specifically, the testimony of the expert witnesses was that based on the geological and geophysical information accumulated in the period between April and January 1, the aggregate fair cash value of the properties amounted to $5,446,000.

The findings of the Board of Tax Appeals were that the selling price as of April was so closely related to the assessment date that it constituted evidence of value; that the method employed by the General Service Administration in selling the properties limited the prospective purchasers in their ability to test and evaluate the quantities of oil and gas before submitting their bids; that the quantities of oil were less than anticipated by the purchasers; that the bids were highly speculative; and that the sale price was excessive, but that as of January 1 there was still an element of speculation which would have enhanced the market value of the interests above the value testified to by witnesses for appellants. The Board of Tax Appeals then fixed the fair market value of the properties in the aggregate amount of $16,989,062.

On the appeal to the Union Circuit Court, the trial court concluded that the sale price of the properties was sufficient evidence to preclude disturbing the findings in the order of the Board of Tax Appeals with respect to the fair cash value of the properties as of January 1.

█ The issue posed on this appeal is whether the findings of fact support the order of the Board of Tax Appeals, KRS 131.370(3)(d). The April sale price, close to the assessment date, is clearly "evidence" and as stated in Evans v. Allen, 305 Ky. 728, 205 S.W.2d 514 (1947), "[t]he sale price of property is not, under all circumstances, the sole criterion for the guidance of the assessing authority in fixing the value for taxation purposes, but where the property is sold at or near the assessment date and the sale is fair and voluntary the sale price is the best evidence of the property's 'fair cash value, estimated at the price it will bring at a fair voluntary sale.'"

There, this court observed that no fact or circumstance was presented by the evidence tending to show there was any change, increase, or fluctuation in the fair cash value of the land between the date of the sale and the assessing date.

█ In the posture of the situation presented here with the number of expert witnesses testifying for the appellants and the voluminous, highly technical testimony of methods used in evaluating mineral properties such as these, the trier of the facts clearly was compelled to reach the conclusion that the sale price paid by the appellants far exceeded the fair cash market value of the properties to the extent that the sales price bore no reasonable relationship to the market value as of January 1 and was of no probative value at all. The Board of Tax Appeals was then in the position of having no other testimony upon which to base its findings than the expert testimony introduced by appellants. The "best evidence" of the sale price clearly was destroyed by the testimony offered by appellants.

The situation here is analogous to our holding in Evans Oil & Gas Company v. Draughn, Ky., 367 S.W.2d 453 (1963), where it is stated that the "assessment" raises a presumption that the taxing authority's valuations are not excessive but that such a presumption is not evidence but

serves in the place of evidence until the opposing party comes forward with his proof, whereat it disappears, and that one competent valuation witness in support of the assessment would have constituted conflicting evidence sufficient to support the finding adverse to the taxpayer.

Here there was the "evidence" of the sale price; but once that evidence in the unusual circumstance of this situation was destroyed, what "substantial" evidence did the Kentucky Board of Tax Appeals have before it upon which to base the valuation fixed in the order? The answer has to be the valuation placed on the properties by appellants' expert witnesses.

In Department of Revenue v. Anaconda American Brass Company, Ky., 435 S.W.2d 65 (1968), this court again recognized that the sale price is the best evidence of the property's fair cash value, but that other factors may warrant a finding that the fair cash value was greater or less than the actual sale price.

In the peculiar circumstances of this case, with a sales price paid for the properties highly speculative and no expert testimony to rebut appellants' witnesses, the Board of Tax Appeals was left with no substantial evidence on which to base a valuation of the property except the aggregate amount fixed by appellants' witnesses.

We are of the opinion that the valuation placed on the properties by the Board of Tax Appeals was not based on substantial evidence and was subject to judicial review.

The judgment is reversed with directions to enter a judgment in conformity with this opinion.

OSBORNE, C. J., and JONES, MILLIKEN, STEINFELD and STEPHENSON, JJ., concur.

REED, J., dissents.