**SEARS, ROEBUCK & COMPANY, Appellant,**

v.

**BOONE COUNTY BOARD OF ASSESSMENT APPEALS, Appellee.**

Court of Appeals of Kentucky.

March 21, 1986.

Rehearing Denied Discretionary Review Denied by Supreme Court Oct. 7, 1986.

Paul B. Calico, C. Francis Barrett, Cincinnati, Ohio, for appellant.

John A. Miller, Legal Services Section, Revenue Cabinet, Com. of Ky., Frankfort, Larry J. Crigler, Burlington, for appellee.

Before COMBS, DUNN and HOWARD, JJ.

COMBS, Judge.

This is an appeal from the Boone Circuit Court, reversing a decision of the Kentucky Board of Tax Appeals which reduced the assessed value of appellant's property from $38,000,000.00 to $30,700,000.00.

This appeal involves property located in Boone County which is commonly known as the Florence Mall [the Mall]. In 1982, appellee Boone County Board of Assessment Appeals [board] valued the Mall property at $16,324,044.00. On March 31, 1982, appellant Sears, Roebuck & Company [Sears] sold the Mall for the listed price of $38,-000,000.00. The buyer, Western and Southern Life Insurance Company [Western and Southern], paid Sears approximately $19,000,000.00 in cash and assumed a thirty-year, 8.75% mortgage and note for the $19,000,000.00 balance.

Based upon the Mall's sale price, the Boone County Property Valuation Administrator re-assessed the Mall at $38,000,-000.00 for the 1983 tax year. Sears objected to the Mall's appraised value, so it requested a hearing before the board to contest the valuation. At that point, Mall owner Western and Southern replaced Sears in this proceeding, pursuing the appeal on its own behalf.

Western and Southern produced two expert real estate appraisers at the hearing. Neither expert testified as to the fair market value of the Mall property itself, but both opined that the Mall was worth approximately $30,000,000.00. The experts based their opinions on a cash-equivalency analysis of the sale terms, which translates any non-cash consideration into present cash value. The appraisers agreed that Western and Southern's $19,000,000.00 down payment had a present cash value of $19,000,000.00. However, they concluded that the $19,000,000.00 mortgage and note had a present cash value of only $11,000,-000.00. Based on this analysis, the experts reasoned that the Mall's true value was

around $30,000,000.00 rather than the $38,-000,000.00 assessed value.

The board accepted Western and Southern's analysis and reduced the Mall's assessed value to $30,700,000.00. The Boone Circuit Court reversed on appeal, holding that the board erred as a matter of law in computing fair market value based upon a cash-equivalency analysis.

Appellant alleges that the lower court erred in reversing the board's valuation because its decision was supported by substantial evidence of probative value. According to appellant, one of its experts performed a traditional valuation of the Mall property which reached the same result as the appraisers' cash-equivalency analysis.

We have carefully reviewed the record in this case, and we conclude that appellant's position is not supported by the evidence. Although one expert testified as to the price range of commercial real estate and discussed various factors which impact fair market value, he based his appraisal on a cash-equivalency analysis of the sale terms. Therefore, the primary issue before this Court is whether a cash-equivalency analysis is a constitutionally acceptable method of property valuation.

■ Section 172 of the Kentucky Constitution states that "all property, not exempted from taxation by this Constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale...." If the property is sold at or near the assessment date in a fair and voluntary sale, the sale price is the best evidence of the property's fair cash value. *Evans v. Allen*, 305 Ky. 728, 205 S.W.2d 514 (1947). Since the assessing authority valued the Mall property at its $38,000,000.00 sale price, appellants bore the burden of showing that valuation was wrong. *St. Matthews Gas & Electric Shop, Inc., v. Commonwealth*, Ky., 266 S.W.2d 106 (1954).

■ An objecting taxpayer may show a property's sale price does not reflect its actual value by demonstrating unusual circumstances surrounding the sale. For example, in *Department of Revenue v. Anaconda American Brass Company*, Ky., 435 S.W.2d 65 (1968), the taxpayer paid a premium price for a large tract of land in order to acquire a few prime industrial acres. The court recognized the unusual circumstances surrounding the sale and used comparable sales to determine the actual value of the non-industrial land. *See also Allied Chemical Corp., v. Union County Board of Supervisors*, Ky., 511 S.W.2d 196 (1974). [taxpayer paid artificially inflated price for investment property].

■ In this case, appellant does not suggest that any unusual circumstances surrounded the sale of the Mall property or that $38,000,000.00 is an inflated price for a buyer to pay for this type of property. Appellant's entire argument is grounded on the theory that the present value of the $19,000,000.00 cash down payment and $19,000,000.00 mortgage and note is approximately $31,000,000.00. Appellant reasons that, because the Mall's sale price is equivalent to $31,000,000.00 in cash, that value constitutes its fair cash value under Kentucky Constitution, § 172.

This is a case of first impression in Kentucky, but other jurisdictions have considered and rejected appellant's position. In *Columbus Bd. of Educ. v. Fountain Sq. Assoc.*, 9 Ohio St.3d 218, 459 N.E.2d 894 (1984), the taxpayer financed approximately $7,000,000.00 of a $9,000,000.00 property purchase through first and second mortgages. After the county assessed the property at its sale price, the buyer attempted to have the value lowered to reflect the cash-equivalency value of the notes. However, the Ohio Supreme Court refused, stating that "the fact that appellee obtained favorable financing does not render the sale price unrepresentative of true value." *Id.*, 459 N.E.2d at 895. Likewise, in *Golder v. Dept. of Revenue, State Bd. of Tax*, 123 Ariz.App., 271, 599 P.2d 227 (1978), aff'd 599 P.2d 216 (1979), the court recognized that appraisals based on financing arrangements tend to value the creditor

rather than the property itself. The court noted that the law requires property valuation based on fair cash value in order "to exclude the uncertainty and injustice of valuations based on credit." *Id.,* 599 P.2d at 231. Finally, in *River House Company v. Assessor of the City of Binghamton,* 56 A.D.2d 980, 393 N.Y.S.2d 125 (1977), the court recognized that "[i]t is the uncertainty of the reasons behind a mortgage loan that detracts from the evidentiary value to be accorded a mortgage in a tax assessment proceeding." *Id.,* 393 N.Y.S.2d at 126.

We agree with these authorities. A cash-equivalency analysis values the taxpayer's financing arrangements rather than the property itself. In our opinion, this method of valuation will inevitably cause disparate assessment of identical properties, a clearly unconstitutional result. As the Arizona Court of Appeals recognized, "it is the duty of the assessor to value the property and not value the creditor or the terms of a sale which may be subject to many variables." *Golder v. Department of Revenue, State Board of Tax Appeals,* 599 P.2d at 231.

The judgment of the Boone Circuit Court is affirmed.

All concur.