## Clark v. Riehl et al.

May 30, 1950.

Franklin S. Fitch, Judge.

Ropke, Goldstein, Lampe, & Poynter, for appellant.

William F. Clarke, Freeman L. Robinson, and Randolph A. Brown for appellees.

VAN SANT, COMMISSIONER—Reversing.

On September 30, 1949, a group of persons, being the owners of more than fifty one per centum of the property abutting upon Fairy Drive and Elfin Avenues, public, but not County or State, roads in Jefferson County outside of Louisville, filed a petition in the Jefferson County Court for the creation of a public road district under Chapter 184, KRS. The district, if established, would commence on Fairy Drive 140 feet east of its intersection with Chenowith Lane and extend eastwardly to the intersection of Fairy Drive with Chippawa Trail, an approximate distance of 1600 feet, and on Elfin Avenue it would commence at a point approximately 763 feet east of its intersection with Chenowith Lane and extend eastwardly to its intersection with Chippawa Trail an approximate distance of 900 feet. Neither the beginning point of the proposed district on Fairy Drive nor that on Elfin Avenue is at an intersection of either of those streets with any other street, road, or thoroughfare; each beginning point, however, commences at the terminal point of an existing pavement in the course of each of the roads mentioned in the description of the district.

Appellants, who are owners of property abutting upon the roads comprising the district, demurred specially to the jurisdiction of the Court, filed a general demurrer to the petition, and answered, protesting the creation of the district. Evidence was heard on the protest and judgment entered by the County Court in accordance with the prayer of the petition.

Four arguments are advanced in support of appellants' contention that the judgment should be reversed. In view of our conclusion in respect to the first point argued, it is unnecessary for us to discuss the other three. The first contention is that the petition fatally is defective and the judgment creating the district is erroneous

because the district, as described in the petition and which was incorporated by reference in the judgment, does not comply with the requirements of KRS 184.020 in respect to boundary lines. That Section reads:

"Sponsorship of road district; preparation of map, estimate of cost, and petition. A public road district may be established in the following manner: Any person or group of persons owning property abutting upon any public road (which is neither a county road nor a state road) in counties outside of and containing cities of the first class may sponsor the creation of such a road district. The sponsors shall first prepare or have prepared for them a map of that section of such public road which they desire to have improved. Such map shall show the boundary lines of the road, the intersections with other roads and the terminal points on the road desired to be improved, *which shall always be center lines of intersections with other roads,* and shall set forth on such map the names of the owners of all property and the number of linear feet owned by them abutting upon such road. The sponsors of said road district shall also have estimated for them by an engineer, who must be a private engineer licensed by the Commonwealth of Kentucky pursuant to KRS Chapter 322, the approximate cost of constructing the improvements desired, together with a statement of the approximate cost which shall be borne by each owner of property abutting on the road, determined by the number of linear feet of property owned by each abutting property holder. Said sponsors of said road district shall also prepare a petition and shall attach to said petition the aforesaid maps and statements of cost." (Our emphasis.)

In many cases, from the earliest decisions of this Court to now, we have construed the words "shall" and "must" as the case may have been, to have the meaning of "may" and "might," where the context indicates such was the intention of the Legislature or the draftsman of the instrument under consideration at the time. But where other words are used in connection with "shall," "must," "may" or "might," which clearly indicate mandatory or directory construction, as the case may be, we have never ignored the force of the descriptive or qualifying language.

KRS 184.020, supra, provides that the sponsors of

the road district shall prepare or have prepared for them a map of that section of a public road which they desire to have improved, and that the map shall show the boundary line of the road, its intersection with other roads, and the terminal points on the road desired to be improved. Then, without break in thought or sentence, the Legislature incorporated in the Act the following words: "which (terminal points on the road) *shall always be* center lines of *intersections* with *other* roads, \* \* \*." (Our emphasis.) The use of the words "shall always be" clearly manifests to us that it was the intention of the Legislature to mandatorily require the district to commence at the center line of the junction of the described road and another road pursuing a different course.

It is conceded that no other road intersects Fairy Drive or Elfin Avenue at their western terminal points; but it is contended that, since Fairy Drive has been paved for a distance of 140 feet east of its intersection with Chenowith Lane, and Elfin Avenue has been paved for a distance of 763 feet east of its intersection with that lane, the requirements of the statute have been complied with, or, at least, substantially so. In support of this contention, appellees argue that the unpaved portion of Fairy Drive intersects, by joining with, the paved portion of the Drive and the unpaved portion of Elfin Avenue intersects, by joining with, the paved portion of that Avenue. We are of the opinion that two expressions in the section under consideration preclude such construction; the first is "center lines of intersections," which clearly indicates that the intersection referred to is such as would not be the mere extended portion of the road described; the other expression is "other roads" which we construe to mean different roads from, in contradistinction to mere extended portions of, described roads.

As authority for their position, appellees cite a part of the text in 25 Am. Jur., Section 209, Page 509, wherein it is said: "The weight of authority is to the effect that the junction of two streets or highways may form an intersection, within the meaning of a traffic statute or regulation, although one of them extends only to and not beyond the other, at least where the spirit and purpose of the regulation extend to such a locus."

This section of the text refers to a place where one

street ends or deadends at its angular junction with another, and does not refer to a given point in a street or highway which is not touched by a different street or highway. Even if this construction were not apparent, an unquoted portion of the text immediately preceding the portion quoted clearly defines the term ''intersection of a street or public highway'' to mean ''the space of the street or highway, common to both ways. The center of the intersection is the point where the centerline of one street or road meets the centerline of the other, both lines being drawn parallel to and halfway between the curbs and projected to the point of meeting.''

Neither do we construe the definition cited from Winston's Dictionary to indicate a different meaning. That definition of ''intersection'' is:

''The place where two lines or two surfaces meet.'' Integrated segments of one line do not constitute two lines; neither do two such segments of a street constitute two streets. The word ''intersect'' means: ''To pierce or divide by passing through or athwart; cut across; cross; as, any two diameters of a circle intersect each other.'' The word ''intersection'' means: ''Act, state, or place of intersecting.'' Webster's New International Dictionary. We have been unable to find any definition of the word intersection sufficiently elastic to incorporate the meaning given it in the argument of counsel for appellees.

The judgment of the County Court, approving the creation of the district, recites:

''The proof further shows that the 140 feet omitted on Fairy Drive and the 763 omitted on Elfin Avenue are public roads and that they are paved roads.

''The technical wording of the statutes contemplates road districts with the streets or roads extending to the center of the intersecting roads. The obvious purpose is to provide for a completion of streets or roads to the natural length and not to a dead end.

''Here, however, the abutted property owners, without forming a road district, have completed and incurred the expense incident to parts of these two streets. It would indeed be a foolish thing to require that these two sections of streets which are already paved be taken up and rebuilt under the proposed district. This would in-

deed be a duplication of work. The law does not require a foolish or non-essential thing to be done.''

The County Judge Pro Tem., who pronounced judgment, ignored the rule of statutory construction that the Legislative intent must be determined from the language used in the statute. Department of Revenue et al. v. McIlvain et al., 302 Ky. 558, 195 S. W. 2d 63. Courts should be extremely careful to accord to the Legislature the power to exercise those matters of discretion which are preserved to it by the Constitution. Thus the wisdom or folly of Legislative enactments, within constitutional bounds, may not be weighed in judicial construction of a statute free of ambiguity.

We are of the opinion that the Court erred in approving the creation of the district, for which reason the judgment must be, and hereby is, reversed.