**W. Gayle FAUST, Appellant,**

v.

**COMMONWEALTH of Kentucky, Tourism Development Cabinet, Department of Parks, et al., Appellees.**

No. 2002–SC–0545–DG.

Supreme Court of Kentucky.

Aug. 26, 2004.

Donald Duff, Frankfort, Counsel for Appellant.

Sarah O. Hall, Assistant General Counsel Tourism Cabinet, Mark A. Sipek, Personnel Board, Frankfort, Counsel for Appellees.

Opinion of the Court by Justice GRAVES.

On September 19, 1997, Appellant, W. Gayle Faust, was terminated, without cause, from his "political" (or unclassified) appointment to a non-merit service position within the Kentucky Department of Parks. As a career employee, promoted from the classified to the unclassified service, Faust nonetheless retained statutorily-granted reversion rights for employment within the classified service of state government. Since his termination, however, Faust and the Department have differed in their interpretations of these rights. In reviewing this matter, the Personnel Board, the Franklin Circuit Court and the Court of Appeals have each reached varying conclusions, with the Court of Appeals denying Faust reinstatement to the classified service. We accepted discretionary review to determine the scope of reversion rights belonging to Faust. After hearing oral argument and reviewing the record, we affirm the Court of Appeals.

## BACKGROUND

In 1996, Faust left the relative security of employment in the state classified service by accepting a promotion to the non-merit system position of Division Director II, within the Department of Parks Division of Personnel. Appointees to the unclassified service are largely excluded from the employment protections afforded by KRS Chapter 18A, and may be terminated without cause. *See Martin v. Corrections Cabinet*, Ky., 822 S.W.2d 858, 860 (1991). Despite such risks, "career employees," defined by KRS 18A.005(4) as individuals with sixteen or more years of full-time state service, may qualify for reversion rights upon dismissal.

Faust, a career employee by virtue of more than twenty-six years of state employment, enjoyed reversion rights pursuant to KRS 18A.115(4) and 18A.130(2), the first statute providing:

Career employees within the classified service promoted to positions exempted from classified service shall, upon termination of their employment in the exempted service, revert to a position in that class in the agency from which they were terminated if a vacancy in that

class exists. If no such vacancy exists, they shall be considered for employment in any vacant position for which they were qualified pursuant to KRS 18A.130 and 18A.135.

The second reversion statute, KRS 18A.130(2), mirrors the language of KRS 18A.115(4) quoted above, but requires a career employee to attain "status," or tenure, in a classified service position in order to qualify for reversion rights upon dismissal:

> If the career employee has previously attained status in a position in the classified service, he shall revert to a position in that class in the agency from which he was terminated if a vacancy in that class exists. If no such vacancy exists, he shall be considered for employment in any vacant position for which he is qualified pursuant to the reemployment procedures.

Since his termination as Division Director II, the Department of Parks and Faust have remained sharply divided over the operation of these statutes. Based upon the Personnel Cabinet's interpretation of KRS 18A.115(4), the Commissioner of Parks determined that Faust possessed reversion rights to a position of Assistant Director, the last position Faust held in the classified service. However, because there were no vacant Assistant Director positions within the Department at the time of his dismissal, the Commissioner instructed Faust that his name would instead be placed on the state re-employment register, initially under the Assistant Director classification, and thereafter for any position for which Faust tested and qualified.

At the invitation of the Commissioner, Faust identified two vacant Staff Assistant positions to which he asserted reversion rights. Faust claimed these positions were comparable in both responsibility and pay with his former classified service position of Assistant Director. Faust also informed the Commissioner that he had successfully tested and qualified for these positions following his termination from the unclassified service.

After consultation with the Personnel Cabinet, the Commissioner disputed Faust's claim of reversion rights to the Staff Assistant positions. Consequently, the Commissioner informed Faust that in lieu of reversion, Faust was instead "under full consideration for any vacant position" for which he qualified.

Faust appealed to the Personnel Board, alleging an "improper denial of career employee reversion rights." The Board's hearing officer framed the issue presented narrowly: "Was the Appellant [Faust] denied a *right* to be reverted to a position as Staff Assistant?" Following an extensive evidentiary hearing, the hearing officer summarized the Personnel Cabinet's interpretation of the statutes pertaining to reversion:

a. A career employee possesses reversion rights to the last classification the employee held in the classified service before going to the unclassified service. This interpretation is based on the use of the singular term "that class" in KRS 18A.115(4), 18A.130(2) and 18A.135(1);

b. If no vacancy exists in the agency in the class to which the employee may revert, then the employee possesses re-employment rights to the reversion class and any other class for which the employee is qualified and may be placed on re-employment registers for those additional classes upon written notification.

The hearing officer concluded that "the contemporaneous construction of these statutes by the Personnel Cabinet is not

inconsistent with the language of the statutory provisions in KRS 18A.115(1)[*sic*] and 18A.130(2) and is entitled to significant weight." Accordingly, since there were no vacancies in Faust's last classified position of Assistant Director, and because Faust never held status in the position of Staff Assistant, the hearing officer recommended that Faust's appeal for reversion to these positions be denied. The hearing officer stressed that under these circumstances, KRS 18A.115(4) and 18A.130(2) provided Faust with the *right to be considered* for employment, but not an automatic *right to be employed.*

Faust filed exceptions to the hearing officer's recommended order, and without explanation the Personnel Board sustained Faust's appeal to the extent that, from the date of the Board's order, the Department of Parks was directed to hire Faust in any vacant position for which he qualified. The Board denied Faust's appeal to the extent that it did not order him reverted to the position of Staff Assistant, which position the Commissioner did not intend to fill.

Both parties petitioned the Franklin Circuit Court for review of the Personnel Board's final order. The circuit court granted Faust's petition in its entirety, ordering, among other things, Faust's immediate reversion to the same or similar position as he last held in the classified service, at his reverted salary, effective the date of his termination. The circuit court reasoned that the General Assembly, by adopting merit principles of employment for state personnel, intended for the retention of career employees upon their separation from the unclassified service. "[T]he legislature promised more to career employees than the mere hope that if terminated from the unclassified service their former classified position will be vacant."

The Court of Appeals, in a 2–1 decision, reversed the lower court, observing that despite the general intent and purpose of KRS Chapter 18A, "we are bound by what was enacted, not what was 'intended."' The Court of Appeals stated that "the crux of the matter" is the meaning of the phrase "considered for employment," as used in the second sentence of KRS 18A.115(4). The Court of Appeals determined that in situations where no vacancy exists in the reversion class, the use of the word "consider" allows an element of discretion, and does not compel an agency to offer employment. The majority opinion concluded by stating: "the decision of the hearing officer was correct and should be reinstated."

### ANALYSIS

Much of the difficulty in interpreting the proper scope of Faust's reversion rights lies in determining where his valuable reversion rights end and his somewhat lesser re-employment rights begin. Although Faust does not directly contest the proper application of re-employment rights in this case, the distinction between reversion and re-employment rights is crucial to understanding the ramifications of Faust's claims. Briefly, reversion permits uninterrupted state employment, at a salary commensurate with that last received in the classified service. In contrast, the re-employment procedure admits the specter of unemployment, the possibility of lower wages, and no guarantee of rehire.

Faust views KRS 18A.115(4) and 18A.130(2) as requiring his reversion to *any* vacant position for which he is qualified. In a sense, Faust construes reversion rights in a manner so expansive that the re-employment question is never reached. The Department of Parks, on the other hand, regards reversion as a much more limited right, a subset of the

broad re-employment rights granted to career employees. For the Department, reversion is limited to those positions in which a career employee has previously attained status in the classified service.

In our opinion, neither view is satisfactory; instead we agree with the Court of Appeals that the "hearing officer was correct," and we borrow heavily from the meticulous findings and conclusions supporting the original recommended order in this matter.

## I.

Faust claims that despite his promotion to the unclassified service, he possesses a constitutionally-protected property interest in continued state employment. Faust bases this assertion on two elements: 1) his retained "status" in the classified service following promotion to an exempt position, and 2) what Faust interprets as the intent of the legislature "to assure the career employees of continued employment in the classified service in the event they were dismissed from their unclassified positions, without cause (and without right of appeal)."

Faust points out that a state employee may only be deprived of a right to continued employment through procedures that comport with due process. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). However, the essential question here is not whether the administrative hearings and subsequent judicial review afforded Faust due process, but whether Faust has an expectation of continued employment following his termination from the unclassified service.

■ Typically, only classified employees are recognized as having such protected property rights. A classified merit employee "is endowed with certain rights and protections, among those being the right of continued employment unless 'just cause' for dismissal is demonstrated by the agency by whom he is employed." *Transportation Cabinet v. Woodall*, Ky.App., 735 S.W.2d 335, 337 (1987). *See also Koo v. Commonwealth, Dep't for Adult and Technical Education*, Ky.App., 919 S.W.2d 531, 534 (1995).

■ For Faust, a guarantee of continued state employment can only be determined by examining the particular statutes and ordinances in question. *Bishop v. Wood*, 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Weiand v. Board of Trustees of Kentucky Retirement Systems*, Ky., 25 S.W.3d 88, 93 (2000). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ As a matter of statutory construction, we are guided by both the intent of the legislature and plain language of the provisions involved. These interpretive frameworks are not mutually exclusive, for although KRS 446.080(1) provides that "[a]ll statutes of this state shall be liberally construed to promote their objects and carry out the intent of the legislature," this Court must ascertain that intent from the words used, "rather than surmising what may have been intended but was not expressed." *Flying J Travel Plaza v. Commonwealth*, Ky., 928 S.W.2d 344, 347 (1996).

■ Undoubtedly, the legislature has provided career employees with specific rights of reversion and re-employment

upon termination, without cause, from their unclassified service positions. However, "[i]t is neither the duty nor the prerogative of the judiciary to breathe into the statute that which the Legislature has not put there. The humane spirit of the statute does not warrant its extension beyond its legitimate scope." *Gateway Construction v. Wallbaum,* Ky., 356 S.W.2d 247, 248–49 (1962) (citations omitted).

KRS 18A.0751(4)(j) directs the Personnel Board to promulgate regulations "[f]or the promotion of career employees to positions in the unclassified service without loss of status to the individual employees so promoted, as provided by this chapter." In response, the Personnel Board adopted 101 KAR 3:050, Section 1(2), which provided in part that "[a]ny career employee promoted from a classified service position retains his status in the classified service."

Simply because career employees retain their "status" following their promotions from the classified service does not lead inexorably to the conclusion that they have sweeping rights to continued employment, distinct from those provided for by the reversion or re-employment statutes. As part of the overall statutory scheme, the retention of "status" allows career employees to avoid once again serving an initial probationary period following their reversion or re-employment in the classified service. *See* KRS 18A.111.

Although we are not unsympathetic to the plight of Faust, terminated less than two months before he reached his twenty-seventh year of state service, we must limit his reversion rights to those delineated by statute, rather than those we may wish he had received, but were not provided for by the legislature. Therefore, viewing the applicable reversion statutes and regulations as a whole, we do not perceive a grant of continued employment, but rather an interrelated set of statutes that define the reversion and re-employment rights accorded to career employees.

## II.

### A.

The first sentence of KRS 18A.115(4) directs that career employees "shall, upon termination of their employment in the exempted service, revert to a position in *that class* in the agency from which they were terminated if a vacancy in *that class* exists." (emphasis added). Faust argues that the use of the phrase "that class" in KRS 18A.115(4), as well as in 18A.130(2), allows reversion to any class, not just the last class, for which an employee may have previously gained status. As such, Faust contends that the Court of Appeals erred by determining that career employee reversion rights are limited to the last class of position in which the employee held status before leaving the classified service.

Actually, the Court of Appeals never directly addressed this issue. Instead, the court adopted an interpretation of reversion that would require an agency to determine whether a vacancy exists in "a position" that the career employee "previously held status" within the classified service. Such an interpretation could conceivably permit reversion to any class the career employee had previously attained status in, not just the last class.

In contrast, the hearing officer reached a more limited interpretation in his conclusions of law, a conclusion that was subsequently adopted by the Personnel Board:

> The Personnel Cabinet has consistently over a number of years interpreted the language in KRS 18A.115(4) and 18A.130(2) referring to "that class" as referring to the last class in the classified service in which a career employee held status before moving to the unclassified service in determining to what

class a career employee has a *right* to revert.

(emphasis in original).

Among the numerous witnesses who testified before the hearing officer, Daniel Egbers, General Counsel and Chief Legal Officer for the Personnel Cabinet, stated that equating the singular "that class" with "last class" prevents agencies from "lowballing" employees, by barring reversion to lower, earlier classifications than the employees' last classification in the classified service. Other witnesses, including Thomas Greenwell, the former Commissioner of Personnel from 1983 to 1991, confirmed the general practice of interpreting "that class" in a manner synonymous with "last class," but also indicated that if no vacancy existed in a career employee's last class, an agency must then attempt to place the employee in any class for which he qualified.

We note that the Personnel Cabinet's long-held interpretation of the reversion statutes, equating "that class" to "last class," is entitled to significant weight. *Hagan v. Farris,* Ky., 807 S.W.2d 488 (1991); *Barnes v. Dep't of Revenue,* Ky. App., 575 S.W.2d 169 (1978). Furthermore, despite what Faust describes as conflicting testimony, the hearing officer's findings are supported by substantial evidence in the record, and are therefore conclusive. *Urella v. Kentucky Board of Medical Licensure,* Ky., 939 S.W.2d 869, 873 (1997); *Kentucky Commission on Human Rights v. Fraser,* Ky., 625 S.W.2d 852, 856 (1981).

Finally, although this Court reviews questions of law *de novo, Kosmos Cement Company, Inc. v. Haney,* Ky., 698 S.W.2d 819 (1985); *Kentucky State Racing Commission v. Fuller,* Ky., 481 S.W.2d 298 (1972), we agree with the hearing officer's observation that the contemporaneous construction of these statutes by the Person-

nel Cabinet is "not inconsistent" with the language of KRS 18A.115(4) and 18A.130(2). We note that the reversion class, limited here to the "last class" in which a career employee held status in the classified service, may nonetheless encompass more than one position. Unfortunately for Faust, no vacancies existed in any positions in his reversion class, Assistant Director, at the time of his dismissal from the exempted service.

### B.

During the 2000 session of the Kentucky General Assembly, well after Faust's termination from the unclassified service, the legislature for the first time defined "reversion" by amending KRS 18A.005 (2000 Ky. Acts ch. 91 § 1). KRS 18A.005(32) now makes clear that "reversion means either the returning of the status employee to his or her last position held in the classified service, if vacant, or the return of a status employee to a vacant position in the same or similar job classification as his or her last position held in the classified service." According to Faust, by defining reversion, the legislature has "given expression of its intent regarding the previously enacted career employee reversion statutes."

Faust overlooks KRS 446.080(3), which provides in no uncertain terms that "[n]o statute shall be construed to be retroactive, unless expressly so declared." In *Commonwealth Dept. of Agriculture v. Vinson,* Ky., 30 S.W.3d 162 (2000), we further opined:

> [t]here is a strong presumption that statutes operate prospectively and that retroactive application of statutes will be approved only if it is absolutely certain the legislature intended such a result. This is particularly true when the legislation is substantive and not remedial,

and new rights and new duties are created.

*Id.* at 168. *But see C & H Entertainment, Inc. v. Jefferson County Fiscal Court,* 169 F.3d 1023, 1027 (6th Cir.1999) (wherein the Sixth Circuit Court of Appeals drew "considerable guidance as to legislative intent" in the first instance from a subsequent act of the Kentucky legislature).

Although we do not turn a blind eye to the 2000 amendment through slavish adherence to precedent, *see generally Brown v. United States,* 256 U.S. 335, 343, 41 S.Ct. 501, 502, 65 L.Ed. 961 (1921) (Holmes, J.) (discussing ossification of the law); Scalia, Antonin, "Assorted Canards of Contemporary Legal Analysis" 40 Case W. Res. L.Rev. 581 (1989/1990), the issue of whether or not the newly-enacted definition of reversion merely clarifies the Personnel Cabinet's long held interpretation of "last class," or instead broadens the reversion class available to career employees, is a matter of some conjecture and not properly before this Court.

### III.

If no vacancy exists in the reversion class, as defined in section II. A., *supra,* then the second sentences of both KRS 18A.115(4) and 18A.130(2) mandate that a dismissed employee "shall be considered for employment" pursuant to the re-employment procedures. Faust argues that the use of the word "shall" before the phrase "considered for employment" in each reversion statute indicates the legislature's intent to remove any element of discretion from the re-employment process. Faust further submits that the use of the word "shall," in this context, requires agencies to offer employment in any position for which the terminated career employee qualifies.

Of course, " '[s]hall' means shall," *Bowen v. Commonwealth, ex rel. Stidham,* Ky., 887 S.W.2d 350, 352 (1994), and KRS 446.010(29) states that "shall" is "mandatory," unless the context requires otherwise. However, we believe the context here allows a less rigid interpretation than Faust promotes. "[W]here other words are used in connection with 'shall,' 'must,' 'may,' or 'might,' which clearly indicate mandatory or directory construction, as the case may be, we have never ignored the force of the descriptive or qualifying language." *Stringer v. Realty Unlimited, Inc.,* Ky., 97 S.W.3d 446, 448 (2003), *quoting Clark v. Riehl,* 313 Ky. 142, 144, 230 S.W.2d 626, 627 (1950).

As articulated by the Court of Appeals, Black's Law Dictionary (6th ed.1990) defines the verb "consider" as following: "To fix the mind on, with a view to careful examination; to examine; to inspect. To deliberate about or ponder over. To entertain or give heed to." The Court of Appeals observed, and we agree, that nothing in this definition indicates one is compelled or mandated to decide an issue one way or another. Even when modified by the word "shall," the phrase "shall be considered" retains its discretionary character. *Cf. Koo v. Commonwealth, supra,* 919 S.W.2d at 534.

This limited grant of discretion to appointing authorities engaged in the hiring process corresponds squarely with the procedures governing the re-employment of career employees. Under re-employment, no vacancy may be filled from a competitive register "until all career employees on the re-employment list for that class of position have denied employment in that class." KRS 18A.135(3). Nonetheless, an appointing authority may refuse to re-employ a qualified employee "for cause." *Id.*

On the whole, "considered for employment" simply reflects the discretionary character of the re-employment rights granted to career employees. Faust, then,

had the right to be considered for re-employment as a Staff Assistant, a position for which he tested and qualified, but no automatic right of reversion to this or any other position except those in his last class in the classified service.

## IV.

■ The final order of the Personnel Board was unusual in that after making only minor technical corrections, the Board approved, adopted and incorporated by reference the hearing officer's complete findings of fact and conclusions of law, the same findings and conclusions that had theretofore supported a contradictory recommendation. The hearing officer, of course, recommended that Faust's appeal be denied, whereas the Personnel Board ordered the Department to hire Faust in any vacant position that was to be filled and for which Faust qualified. No separate findings of fact or conclusions of law accompanied the Personnel Board's order, as required by KRS 13B.120(3).

The only indication of the Personnel Board's possible reasoning for deleting the hearing officer's recommended order comes from a reference to a layoff statute, KRS 18A.113(5), and to an administrative regulation, 101 KAR 3:050, both references contained within the text of the Board's order. We now learn from arguments before this Court that the Board felt constrained to give effect to Section 1(2) of 101 KAR 3:050, a regulation which attempted to implement the reversion procedures through application of the layoff statutes, despite the fact that neither KRS 18A.115(4) nor 18A.130(2) mentions layoffs.

As a general rule, such *post-hoc* rationalizations are inappropriate, particularly as here, when virtually no basis in the record supports the Personnel Board's order. *See Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463

U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983) (stating "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself"). Notwithstanding this oversight by the Personnel Board, the applicability of 101 KAR 3:050 is of central importance on this appeal.

At the time of Faust's dismissal, 101 KAR 3:050, Section 1(2) provided:

Any career employee promoted from a classified to an unclassified position retains his status in the classified service. On separation from the unclassified service, he reverts to a position in that class in which he had status in the agency from which he was terminated if a vacancy in that class exists. *If no such vacancy exists in a position of the former class, the statutes (KRS 18A.113 and 18A.1132) pertaining to layoff shall apply.* He shall be considered for employment in any vacant position for which he is qualified pursuant to KRS 18A.130 and 18A.135.

(emphasis added).

■ Although this regulation has since been deleted, 101 KAR 3:050, Section 1(2) was in force at the time of Faust's dismissal, and the Personnel Board notes that pursuant to KRS 13A.140(1), only a court may declare an administrative regulation invalid. Furthermore, regulations which are duly promulgated and are consistent with the enabling legislation have the force and effect of law. *Centre College v. Trzop*, Ky., 127 S.W.3d 562, 566–67 (2003); *Flying J Travel Plaza, supra*, 928 S.W.2d at 347. However, such regulations may not exceed the scope of the statutory provisions on which they are based, and are "valid only as subordinate rules when found to be within the framework of the policy defined by the legislation." *Flying J Travel Plaza, supra. See also Camera Center, Inc. v. Revenue Cabinet*, Ky., 34

S.W.3d 39, 41 (2000) (stating that an "agency cannot by its rules and regulations, amend, alter, enlarge or limit the terms of legislative enactment").

The record indicates that several years before the inception of this litigation, concerns were raised within the Department of Personnel that 101 KAR 3:050 was likely void because 1) it covered the same subject ground occupied by KRS 18A.115(4), 18A.130 and 18A.135, and 2) the regulation purported to state when the lay-off statutes apply when, in reality, the layoff statutes, themselves, specify their own application and are silent on the issue of reversion and the rights of career employees.

We agree that the references to layoff provisions in 101 KAR 3:050 far exceeded the statutory mandate for creating regulations implementing the reversion rights of career employees, and were therefore "null, void and unenforceable." KRS 13A.120(4). The lay-off rules described in KRS 18A.113, 18A.1131 and 18A.1132 embody a complex and comprehensive scheme for avoiding and minimizing the effects of dismissals, other than for cause, of employees in the classified and unclassified services. However, on the issue of career employee reversion rights, the lay-off statutes are silent. Similarly, nothing in the career employee reversion statutes makes reference to the hiring freezes, delays in expenditures and consolidation of offices that are contemplated by the lay-off provisions. *See* KRS 18A.1132(a)-(c).

Even if we were to give effect to the now deleted provisions of 101 KAR 3:050, the lay-off statutes, much like the re-employment procedures, do not require that a laid-off employee be placed in a vacancy. Instead, they need only be "considered." *Koo v. Commonwealth, supra,* 919 S.W.2d at 534. As stated by the hearing officer, "[n]othing in the lay-off statutes gives the

Appellant a *right* to revert to a position of Staff Assistant."

## CONCLUSION

■ Among the conclusions of law set forth by the hearing officer, we discern a three-step process for analyzing a career employee's reversion rights following dismissal from a non-merit system position:

1) Upon termination of a career employee from the unclassified service, the appointing authority shall determine whether a vacancy exists in a position in the *last class* that the career employee has previously attained status within the classified service;

2) If a vacancy exists in the last class, the agency *shall* revert the employee to a position in that class; but

3) If a vacancy does not exist, the appointing authority need only *consider* the terminated employee for re-employment, as specified by KRS 18A.130 and 18A.135.

We believe this process adheres to the legislative scheme of providing career employees with job security through a limited right of reversion coupled with broad re-employment opportunities.

The judgment of the Court of Appeals is hereby affirmed, and this matter is remanded to the Franklin Circuit Court for proceedings consistent with this opinion.

LAMBERT, C.J., COOPER, GRAVES, JOHNSTONE, KELLER, and WINTERSHEIMER, J.J., concur.

STUMBO, J., dissents in a separate opinion.

Dissenting Opinion by Justice STUMBO.

Respectfully, I must dissent from the majority's holding that, by the meaning of "considered for employment" as used in

KRS 18A.115(4) and 101 KAR 3:050, Section 1(2), the Legislature intended that the agency was not compelled to re-employ Faust. The majority was persuaded that Faust had reversion rights only to a position in the last class to which he previously held status in the classified service; and since there was no vacancy in that position, Faust's only right was to be placed upon the re-employment list and "be considered" for employment in any vacant position for which he is qualified.

KRS 18A.115(4) and 18A.130(2) both require that terminated unclassified career employees "shall" be considered for employment in any vacant position for which they are qualified. The word "shall" is mandatory, and by using it instead of "may," the Legislature removed the element of discretion from the consideration process.

However, the majority here holds that because "shall" is used in connection with "be considered," it retains its discretionary character since "consider" is a discretionary term. They agree that although Faust had the right to be considered for re-employment as a "Staff Assistant," a position for which he was qualified, he had no automatic right of reversion to this or any other position except those in his last class in the classified service, which was "Assistant Director." The majority focuses on the "considered for employment" language, and negates the word "shall" that immediately precedes it.

It seems to defeat the purpose of the job protection granted by the statutes to negate "shall." As the trial court stated, the purpose of the State Personnel Law was to establish a system of personnel administration based on merit principles governing, among other things, promotion and welfare of its classified employees. KRS 18A.010. The General Assembly made a provision to protect the job-security rights of career employees by the enactment of the career employee reversion rights statutes and through the approval of regulations promulgated to implement those statutes. Also, the intent of the Legislature was to assure the career employees of continued employment in the classified service in the event that they were dismissed from their unclassified positions without cause. Furthermore, the positive side for the career employees leaving the safety of the classified service was the guarantee of the retention of status and job placement if the non-merit position was lost. Therefore, it is clear from the regulations that the Legislature intended the career employees to have job protection, and the word "shall" in "shall be considered for employment" is confirmation.

Clearly, here, the Department gave no consideration to the placement of Faust in either of the vacant "Staff Assistant" positions, although the position of "Staff Assistant" was the functional equivalent of, or replacement classification of, his previous position as "Personnel Administrator." Consideration is to be applied according to the re-employment procedures directed by KRS 18A.130, which says that a terminated career employee "shall, upon his written request, be re-employed." Faust complied with this procedure by requesting the "Staff Assistant" position. KRS 18A.135 mandates placement of a career employee in a classified position and an appointing authority may refuse to re-employ "only for cause." Further, the Legislature intended for career employees to be offered and placed in positions for which they are qualified rather than have them lose their property interest in continued employment on the whim of an appointing authority. Therefore, being "considered" would require the agency to "offer" Faust a vacant position, which would be "Staff Assistant."

Moreover, the statutes make it clear that Faust has rights greater than merely employment rights. First, as a career employee promoted from a classified position to an unclassified position, he retains his status, or tenure, in the classified service. KRS 18A.0751(4)(j); 101 KAR 3:050 Section 1(2). Second, because he lost his unclassified position, he had the right to revert to any vacant position in the class for which he had status. KRS 18A.115(4); 101 KAR 3:050 Section 1(2). Third, if no vacancy existed, he had the right to a position pursuant to the layoff statutes. KRS 18A.113; KRS 18A.1132. Finally, Faust is entitled to be placed in any vacant position for which he is qualified. KRS 18A.130; KRS 18A.135.

When an employee has a property right in continued employment, the employer cannot deprive the employee of that right without due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Williams v. Commonwealth of Ky.*, 24 F.3d 1526 (6th Cir.1994). Here, by failing to follow the established procedures regarding reversion, the Department deprived Faust of his property right to continue his employment in state government, without due process. Therefore, I would reverse the Court of Appeals and order Faust's reinstatement to the classified service, meaning that he be returned through reversion to the last position he held in the classified service ("Assistant Director") if vacant, or to another vacant position in the same or similar job classification (such as "Staff Assistant").